**Oliver L. JAQUAY, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 98–7051.**

United States Court of Appeals, Federal Circuit.

Sept. 16, 2002.

Thomas W. Stoever, Jr., Arnold & Porter, of Denver, Colorado, argued for claimant-appellant. Of counsel was Keri L. Howe.

Steven J. Abelson, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; Kathryn A. Bleecker, Assistant Director; and Ho Sik Shin, Trial Attorney. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and David R. McLenachen, Attorney, Department of Veterans Affairs, of Washington, DC. Of counsel was John P. Sholar, Trial Attorney.

Michael P. Horan, Attorney, Paralyzed Veterans of America, of Washington, DC, for amicus curiae Paralyzed Veterans of America. With him on the brief was Morgain M. Sprague.

Robert V. Chisholm, Chisholm Chisholm & Kilpatrick, of Providence, Rhode Island, for amicus curiae National Organization of Veterans' Advocates, Inc.

Martin D. Minsker, Baker Botts L.L.P., of Washington, DC, for amicus curiae Vietnam Veterans of America, Inc.

Before MAYER, Chief Judge, NEWMAN, MICHEL, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, and PROST, Circuit Judges.

LINN, Circuit Judge.

Oliver L. Jaquay seeks review of the final decision of the Court of Appeals for Veterans Claims ("Veterans Court")[1] holding that it lacked jurisdiction to hear an appeal from the Board of Veterans' Appeals ("BVA") because the notice of appeal was not timely filed nor otherwise tolled. *See Jaquay v. West*, 11 Vet.App. 67 (1998). Because Jaquay's misfiled request for reconsideration with the VA regional office ("VARO") from which his claim originated equitably tolled the judicial appeal period for filing his notice of appeal to the Veterans Court, the Veterans Court's dismissal is reversed, and the case is remanded.

---

1. At the time of its decision, the court was known as the Court of Veterans Appeals. Effective March 1, 1999, it became the "Court of Appeals for Veterans Claims." Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, §§ 511(a) and 513, 112 Stat. 3315, 3341, 3342.

## BACKGROUND

Jaquay served in the United States military from February 1953 to July 1961, where he developed a service-connected hearing loss. On April 2, 1992, Jaquay applied for an increase in his service-connected benefits. The Department of Veterans Affairs New York Regional Office denied the claim in October 1992. Jaquay appealed the decision to the BVA in February 1993. On September 20, 1993, the BVA notified Jaquay of the denial of his benefits request. Along with a copy of the decision, the BVA sent Jaquay the statutorily required form entitled "Board of Veterans' Appeals Notice" ("Appeals Notice"), informing Jaquay of his right to either file a motion for reconsideration with the BVA or an appeal to the Veterans Court. Specifically, the Appeals Notice provided: "You may file a motion for reconsideration of this BVA decision at the following address: Board of Veterans' Appeals, 810 Vermont Avenue, NW., Washington, DC 20420." *See* 38 U.S.C. § 5104(a) (2000).

On December 17, 1993, Jaquay executed a motion for reconsideration and addressed it to the "Chairman of the Board of Veterans Appeals." In the motion, Jaquay sought an independent medical opinion and expressed his belief that the Department of Veterans Affairs ("VA") failed to assist him in the development of this claim. The motion concludes: "This is why I am asking the Board of Veterans Appeals for reconsideration. Please review this reconsideration carefully because I intend to go to the Court of Veterans Appeals if my request is not granted." Instead of mailing the motion to the BVA in Washington, D.C., Jaquay's non-attorney representative, Joseph E. Hill of the Division of Veterans Affairs of the State of New York, mailed it to the Department of Veterans Affairs New York Regional Office, which was the VARO where Jaquay's claims file was located. Approximately ten months later, that VARO forwarded Jaquay's motion to the BVA, where it was received on November 17, 1994. The BVA considered and denied Jaquay's motion for reconsideration on January 27, 1995.

On May 23, 1995, within 120 days of the BVA's decision on reconsideration, Jaquay filed a notice of appeal with the Veterans Court. The Secretary moved for dismissal of the action as untimely. Throughout a series of orders directing the parties to brief the issue of the Veterans Court's jurisdiction in the case, Jaquay argued that (1) the VARO should have forwarded his motion for reconsideration to the BVA and (2) any time limits should have been tolled in light of the fact that his appeal would have been timely but for the mailing being directed to the VARO rather than the BVA's office in Washington, D.C.

The Veterans Court granted the Secretary's motion to dismiss because Jaquay's notice of appeal was not timely filed within 120 days of the initial BVA decision as required by 38 U.S.C. § 7266(a)(1) nor otherwise tolled under the principles set forth in *Rosler v. Derwinski,* 1 Vet.App. 241, 249 (1991). In *Rosler,* the Veterans Court, relying on *ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), held that if a motion for reconsideration is filed within 120 days of a final decision by the BVA, "the finality of the initial BVA decision is abated by that motion for reconsideration," and "[a] new 120-day period begins to run on the date on which the BVA mails to the claimant notice of its denial of the motion to reconsider." *See Linville v. West,* 165 F.3d 1382, 1385 (Fed.Cir.1999) (applying the *Rosler* doctrine). Jaquay argued that equitable tolling should apply because the VARO had a duty to forward the motion to the BVA, or return it to Jaquay in a timely manner with instructions on proper filing.

In determining when Jaquay's motion for reconsideration was "filed" with the BVA, the Veterans Court applied its caselaw regarding when notices of appeal are "filed" with the Veterans Court. The Veterans Court then strictly construed *Rosler* and found that Jaquay's motion for reconsideration was "filed" with the BVA only upon the Board's actual receipt, and the Board's receipt came more than 120 days following the initial decision of the BVA. *Id.* at 71. The Veterans Court further concluded that Jaquay's filing with the VARO did not constitute constructive receipt by the Board, and the VARO had no duty to forward or return the motion. *Id.* at 71–73.

Jaquay timely appealed to this court, and the case was heard before a panel on September 5, 2000. On February 16, 2001, the court took the case *en banc* and entered a *sua sponte* order directing the parties to brief the following issues:

1. Do the provisions of 38 U.S.C. §§ 7721, 7722 (P.L. 92–219 & 102–83) and/or the Department of Veterans Affairs Procedure Manual, M21–1, Part III § 11.02, create a duty to timely return or forward all documents misfiled with the Department of Veterans Affairs?

2. Did the enactment of the Veterans Claims Assistance Act of 2000 (P.L. 106–475) affect any duty of the Department of Veterans Affairs established by 38 U.S.C. §§ 7721, 7722, and/or the DVA Procedure Manual, M21–1, Part III § 11.02?

3. If the answer to question one is yes, what effect does a violation of such duty have on the requirement that a veteran must exercise "due diligence" before invoking the doctrine of equitable tolling? *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

## DISCUSSION

### I

We begin with a brief overview of the veterans' benefits system. Congress has created a paternalistic veterans' benefits system to care for those who served their country in uniform. *See, e.g., Hensley v. West,* 212 F.3d 1255, 1262 (Fed.Cir.2000) (recognizing that the veterans' benefit system is "uniquely pro-claimant"); *Nolen v. Gober,* 222 F.3d 1356, 1361 (Fed.Cir.2000) (pointing out Congress' recognition of the "strongly and uniquely pro-claimant system of awarding benefits to veterans") (citations omitted). Under this system, the Secretary has the affirmative duty to assist claimants by informing veterans of the benefits available to them and assisting them in developing claims they may have. *See* 38 U.S.C. § 7722 (2000). Congress recently passed the Veterans Claims Assistance Act of 2000 ("VCAA"), Pub.L. No. 106–475, 114 Stat.2096, "to reaffirm and clarify the duty of the Secretary of Veterans Affairs to assist claimants for benefits under laws administered by the Secretary...."

When a veteran seeks to file an original claim for benefits or reopen an existing claim, he does so at one of the fifty-eight VAROs located throughout the country. If the veteran is unsatisfied with a VARO decision, he can, among other things, appeal the decision to the BVA. To appeal a VARO decision, the veteran is required to file a Notice of Disagreement ("NOD"). 38 C.F.R. § 20.201 (2001). Rather than sending the NOD to the BVA in Washington, D.C., the veteran must send it to the VARO from which the veteran received the adverse decision. *Id.* § 20.300. The VARO reviews the NOD and prepares a Statement of the Case ("SOC"), which details the VARO's position on the issues. *Id.* § 19.26. The filing of the SOC marks the start of the appeal. *Id.* § 20.200. The

veteran then responds to the SOC by filing a Substantive Appeal on VA Form 9 or another form of correspondence containing the necessary information. *Id.* § 20.202. The VARO then prepares a Certification of the Appeal which certifies the case to the BVA. *Id.* § 19.35.

In addition to filing the Substantive Appeal with the BVA, a veteran has the right to a hearing before the BVA. *Id.* § 20.700. The location of the hearing is governed by 38 C.F.R. § 20.705, which provides:

> A hearing on appeal before the Board of Veterans' Appeals may be held in one of the following places at the option of the appellant:
>
> (a) In Washington, DC, or
>
> (b) At a Department of Veterans Affairs facility having adequate physical resources and personnel for the support of such hearings.

Thus, the veteran has the choice of having the hearing before the BVA at a VARO or in Washington, D.C. When the BVA sits at a VARO rather than Washington, D.C., it is known as a Travel Board. When a Travel Board convenes, the veteran's file remains with the VARO. If no hearing is requested or if a hearing is requested in Washington, D.C., the file is sent to the BVA in Washington, D.C. *See* 38 C.F.R. § 20.705 (2001).

Once the BVA reaches its decision, the original copy of the BVA's opinion is placed in the veteran's claims file and copies are sent to the veteran. The entire claims file is then returned to the VARO from which it was received. If the BVA decision is adverse to the veteran, the veteran may, at any time, ask the BVA to reconsider its decision. Requests for reconsideration are handled in two stages. During the first stage, the Chairman of the BVA decides whether the request meets the standards for reconsideration set forth in the regulations. 38 C.F.R. § 20.1001 (2001). If the Chairman orders the BVA to readjudicate the claim, then the claim proceeds to the second stage where the initial BVA decision is vacated and then subjected to a de novo review by a larger panel of the BVA. *See Smith v. Brown,* 8 Vet.App. 546, 550 (1996) (*en banc*).

Instead of filing a motion for reconsideration of the BVA decision, the veteran may appeal a final decision of the BVA to the Veterans Court. *See generally Graves v. Principi,* 294 F.3d 1350, 1351–53 (Fed.Cir. 2002). Under 38 U.S.C. § 7266(a)(1), the appeal to the Veterans Court must be filed within 120 days of the BVA's mailing of its decision. As stated above, the Veterans Court in *Rosler* interpreted this provision as allowing an additional 120 days to file a notice of appeal to the Veterans Court when the claimant filed a motion for reconsideration before the BVA, so long as the claimant filed the motion for reconsideration within 120 days of the initial BVA decision. *See Rosler,* 1 Vet.App. at 249.[2]

In addition to the foregoing, the Chairman of the BVA, at any time, can order that a BVA claim be readjudicated, even after a veteran files an appeal at the Veterans Court. 38 C.F.R. § 20.1001 (2001)

---

2. While the phrase *"Rosler* tolling" has been used by the parties, amici, the Veterans Court, and this court, *see, e.g., Santoro v. West,* 13 Vet.App. 516, 522–23 (2000), *rev'd on other grounds, Santoro v. Principi,* 274 F.3d 1366 (Fed.Cir.2001), the phrase is actually a misnomer. The doctrine set forth in *Rosler* does not toll any limitations period. Rather, *Rosler* merely recognizes that when an initial BVA decision is abated during the appeals period of 38 U.S.C. § 7266(a), the appeals period begins anew 'with a subsequent decision by the BVA. Instead of temporarily halting the appeals period, the *Rosler* rule resets the appeals period. *Cf. United States v. Ibarra,* 502 U.S. 1, 4 n. 2, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991).

("Reconsideration of an appellate decision may be accorded at any time by the Board of Veterans' Appeals on motion by the appellant or his or her representative or on the Board's own motion. . . ."). In this case, we are only concerned with motions for reconsideration filed during the 120–day judicial appeal period of 38 U.S.C. § 7266(a)(1) rather than challenges to the Chairman's decision to not reconsider a case. *See McCall v. Brown*, 6 Vet.App. 215, 217 (1994) (distinguishing decisions reviewing BVA decisions from those reviewing the Chairman's decision to deny reconsideration); *Patterson v. Brown*, 5 Vet.App. 362, 365 (1993) (same).

When a claim for benefits is before the agency, either at the VARO or before the BVA, the relationship between the veteran and the government is non-adversarial and pro-claimant. *Forshey v. Principi*, 284 F.3d 1335, 1354–55 (Fed.Cir.2002) (*en banc*). During the non-adversarial stages of disputes over benefits, veterans often act *pro se* or are assisted by a representative of a veterans' services organization. In fact, a veteran may not enter into a fee agreement with an attorney until the BVA issues a final decision in a case. *See* 38 U.S.C. § 5904(c)(1) (2000). Although the statute does not prohibit an attorney from representing a veteran before the VARO or BVA on an original claim, the law prohibiting lawyers from charging a fee has the practical effect of limiting the ability of veterans to retain a lawyer at the early stages of the claim process. *See, e.g., Maggitt v. West*, 202 F.3d 1370, 1378 (Fed. Cir.2000) (noting that the lack of access to counsel before the VARO or BVA makes the system less "user friendly" than Congress intended); *but see Stanley v. Principi*, 283 F.3d 1350, 1355–56 (Fed.Cir.2002) (noting that lawyers were historically kept out of the process to protect veterans from "the perceived threat that agents or attorneys would charge excessive fees for their services" and to keep the system informal and non-adversarial).

Throughout Jaquay's attempts to petition the VA for benefits, Jaquay had different representatives during the different stages of the claim process. He acted *pro se* at times. At other times, he was represented by a non-attorney representative of the Division of Veterans Affairs of the State of New York. Currently, he is represented by private counsel. At the time when Jaquay's non-attorney representative filed the motion for reconsideration, Jaquay was still seeking relief through the BVA rather than the Veterans Court. Thus, he was operating in the non-adversarial portion of the veterans' compensation process.

## II

The issue before the court in the present case is whether the Veterans Court properly interpreted its jurisdictional statute when it dismissed Jaquay's appeal as being untimely. The Veterans Court held that it lacked jurisdiction because Jaquay failed to "file a notice of appeal with the Court within 120 days after the date on which notice of the decision [was] mailed." According to the Veterans Court, the initial BVA decision had not been abated until more than 120 days after it had been mailed. Thus, the Notice of Appeal filed by Jaquay at the Veterans Court came after the judicial appeal period expired. This presents the specific question of whether the Veterans Court erred by holding that filing a motion for BVA reconsideration at the VARO within the 120–day judicial appeal period does not toll the judicial appeal period for filing a notice of appeal to the Veterans Court.

## A

■ Equitable tolling is generally available in two types of situations: (1) "where

the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96, 111 S.Ct. 453. The *Irwin* Court noted that courts are "less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights" or where there is "a garden variety claim of excusable neglect." *Id.*

■ Although the doctrine of equitable tolling gives courts some latitude in excusing the missing of filing deadlines, an appeal by a veteran of a BVA decision involves a waiver of sovereign immunity, which must be strictly interpreted. *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Following the Veterans Court's decision dismissing Jaquay's appeal, this court sat *en banc* in *Bailey v. West* and discussed the relationship between the principles of sovereign immunity and the statute of limitations set forth in 38 U.S.C. § 7266. 160 F.3d 1360, 1362–63 (Fed.Cir.1998) (*en banc*). Specifically, this court was asked to decide whether the 120–day statute of limitations under 38 U.S.C. § 7266 was subject to the doctrine of equitable tolling.

In *Bailey*, a veteran went to the VARO in Huntington, West Virginia, and with the assistance of a VARO employee, filled out and signed a notice of appeal to the Veterans Court following an adverse decision of the BVA. *See id.* at 1361. The VARO employee took the notice and informed the veteran that she would take care of the appeal. *See id.* However, the employee then failed to file the notice of appeal with the Veterans Court, causing the veteran to miss the 120–day statutory deadline. *See id.* The veteran appealed to this court, arguing that the 120–day statute of limita-

tions should be tolled. Relying on *Irwin*, this court concluded that "the doctrine of equitable tolling, when available in comparable suits of private parties, is available in suits against the United States, unless Congress has expressed its intent to the contrary." *Id.* at 1364. In Bailey's case, equitable tolling was available under the second *Irwin* prong because the veteran was lulled into "accepting and relying upon the advice and aid of the government." *Id.* at 1365.

Jaquay and/or amici argue that Jaquay is entitled to equitable tolling under both of *Irwin*'s two prongs. Whether equitable tolling should apply when a veteran misdirects a motion for reconsideration thus turns on (1) whether, by such conduct, the veteran has "actively pursued his judicial remedies by filing a defective pleading during the statutory period," or, in the alternative, (2) whether he "has been induced or tricked by [the VA's] misconduct into allowing the [judicial appeal period] to pass." *Irwin*, 498 U.S. at 96, 111 S.Ct. 453. Implicated in the consideration of these questions are (1) the statute governing the timeliness of an appeal to the Veterans Court, (2) the regulation governing the filing of a motion for BVA reconsideration, and (3) the Appeals Notice which explains to veterans the procedures for obtaining review before the Veterans Court or reconsideration before the BVA. We address each, in turn.

**B**

■ The statute governing the timeliness of an appeal to the Veterans Court, 38 U.S.C. § 7266(a)(1), provides:

In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the

date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

38 U.S.C. § 7266(a)(1) (2000). Under the statute, the 120–day statute of limitations period begins once the BVA issues its initial decision. If a motion for reconsideration is filed with the BVA during that 120–day period, the initial decision is abated, and the veteran has 120 days from the subsequent BVA decision to file a notice of appeal with the Veterans Court. *See Rosler*, 1 Vet.App. at 249.

Motions for reconsideration before the BVA are governed by 38 C.F.R. § 20.1001, which provides, in pertinent part:

> (a) Application requirements. A motion for reconsideration must be in writing and must include the name of the veteran; the name of the claimant or appellant if other than the veteran (e.g., a veteran's survivor, a guardian, or a fiduciary appointed to receive VA benefits on an individual's behalf); the applicable Department of Veterans Affairs file number; and the date of the Board of Veterans' Appeals decision, or decisions, to be reconsidered. It must also set forth clearly and specifically the alleged obvious error, or errors, of fact or law in the applicable decision, or decisions, of the Board or other appropriate basis for requesting reconsideration. If the applicable Board of Veterans' Appeals decision, or decisions, involved more than one issue on appeal, the motion for reconsideration must identify the specific issue, or issues, to which the motion pertains. Issues not so identified will not be considered in the disposition of the motion.
>
> (b) Filing of motion for reconsideration. A motion for reconsideration of a prior Board of Veterans' Appeals decision may be filed at any time. Such motions *must be filed at the following address:* Director, Administrative Service (014),

Board of Veterans' Appeals, 810 Vermont Avenue, NW., Washington, DC 20420.

38 C.F.R. § 20.1001(a)-(b) (2001) (emphasis added).

Unlike the filing of a Notice of Appeal before the Veterans Court, the BVA sets no statute of limitations for filing a motion for reconsideration. A motion for reconsideration "may be filed at any time." *Id.* § 20.1001(b) (2001). The regulation evinces a belief that any unfairness toward the VA is outweighed by the veteran's right to present his claim. In other words, all claims for benefits are instances "where the interests of justice require vindication of the plaintiff's rights." *Burnett v. New York Cent. R.R. Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). If the veteran, with the assistance of the VA, gathers information to substantiate a claim, the veteran is entitled to receive the appropriate benefits, no matter how long it takes to substantiate the claim.

Under 38 U.S.C. § 5104, an adverse decision of the BVA must be accompanied by a notice explaining the reasons for the decision and "an explanation of the procedure for obtaining review of the decision." In *Cummings v. West,* 136 F.3d 1468, 1472 (Fed.Cir.1998), *overruled on other grounds, Bailey,* 160 F.3d at 1368, this court held that 38 U.S.C. § 5104 "requires nothing more than ... a general outline of the available procedures for obtaining review of a final [BVA] decision." The Appeals Notice provided to Jaquay informed him of three options: (1) filing a motion for reconsideration with the BVA; (2) appealing the decision to the Veterans Court; or (3) reopening the claim by submitting new and material evidence to the VARO. The instructions for filing a motion for reconsideration provided:

> You *may* file a motion for reconsideration of this BVA decision at the following address: Board of Veterans' Ap-

peals, 810 Vermont Avenue, NW., Washington DC 20420. Your motion may be in the form of a letter. It should state clearly and specifically which issue or issues you want the BVA to reconsider and the specific reasons why the BVA should reconsider the issue or issues.

(emphasis added).

The instructions also explain the alternative option of filing an appeal with the Veterans Court:

> You may have the right to appeal this decision to the United States Court of Veterans Appeals (the Court). You may appeal to the Court a final decision of the BVA that follows a notice of disagreement filed on or after November 18, 1988. A Notice of Appeal *must be filed* with the Court within 120 days from the date of mailing of the notice of the BVA decision. The date of mailing is the date that appears on the face of the BVA decision. The Court's address is: The United States Court of Veterans Appeals, 625 Indiana Avenue, NW., Suite 900, Washington DC 20004. You may obtain information about the form of the Notice of Appeal, the methods by which you may file your Notice of Appeal with the Court, the amount of any filing fee, and other matters covered by the Court's rules directly from the Court. You should also mail a copy of the Notice of Appeal to the VA General Counsel (027), 810 Vermont Avenue, NW., Washington, DC 20420. However, the VA General Counsel is not a part of the Court and filing a copy of your Notice of Appeal with the VA General Counsel or any other VA office WILL NOT protect your right of appeal.

(emphasis added).

## III

Jaquay argues that he is entitled to equitable tolling under either of the two *Irwin* prongs. We begin with Jaquay's argument that equitable tolling is available if, by filing a motion for reconsideration with the VARO during the judicial appeal period of 38 U.S.C. § 7266, he shows that he "actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453.

The Supreme Court has allowed equitable tolling where a plaintiff filed the correct complaint in the wrong court. *Id.* at 96 & n. 3, 111 S.Ct. 453 (citing *Burnett,* 380 U.S. at 430, 85 S.Ct. 1050; *Herb v. Pitcairn,* 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483 (1945)). In *Burnett,* an employee of the New York Central Railroad filed suit against his employer in state court under the Federal Employers' Liability Act ("FELA"), 35 Stat. 65, as amended, 45 U.S.C. § 51 *et seq.* (1958). The state court dismissed the case because venue was improper. Eight days later the employee brought an identical action in the federal district court. The district court dismissed the action on the ground that although the state action was brought within the limitations period, the federal action was not timely and was thus barred by the limitation provision of FELA. *Burnett,* 380 U.S. at 424–25, 85 S.Ct. 1050. The Court of Appeals affirmed. The Supreme Court reversed, holding that equitable tolling was appropriate in order to "effectuate[ ] the basic congressional purposes in enacting this humane and remedial Act, as well as those policies embodied in the Act's limitation provision...." *Id.* at 427–28, 85 S.Ct. 1050. The Court concluded that "the humanitarian purpose of the FELA makes clear that Congress would not wish a plaintiff deprived of his rights when no policy underlying a statute of limitations is served in doing so." *Id.* at 434, 85 S.Ct. 1050.

Filing a motion for reconsideration with the VARO instead of the BVA is analogous to the factual situation in the tolling cases before the Supreme Court. While the above Supreme Court cases tolled originally filed actions in trial courts as opposed to actions before appellate courts, the filing of a notice of appeal at the Veterans Court, like the filing of a complaint in a trial court, is the first action taken by a veteran in a court of law. This court in *Bailey* recognized that and applied equitable tolling principles to appellate filings in the context of 38 U.S.C. § 7266. As Judge Michel recognized in *Bailey,* the Veterans Court "is an Article I court set in a *sui generis* adjudicative scheme for awarding benefit entitlements to a special class of citizens, those who risked harm to serve and defend their country. This entire scheme is imbued with special beneficence from a grateful sovereign." *Bailey,* 160 F.3d at 1370 (Michel, J., concurring). In the context of the non-adversarial, paternalistic, uniquely pro-claimant veterans' compensation system, and consistent with our decision in *Bailey,* the availability of equitable tolling pursuant to *Irwin* should be interpreted liberally with respect to filings during the non-adversarial stage of the veterans' benefits process. Just as the limitations period of 38 U.S.C. § 7266 can be stopped and reset by the timely filing of a properly addressed motion for reconsideration, *see Rosler,* 1 Vet.App. at 249, nothing in the statute or regulations at issue suggests that equitable tolling should not be available under appropriate circumstances. *Young v. United States,* 535 U.S. 43, 122 S.Ct. 1036, 1040, 152 L.Ed.2d 79 (2002) ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling,"' *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), unless tolling would be 'inconsistent with the text of the relevant statute,' *United States v. Begger-*

*ly,* 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998)."); *cf. United States v. Brockamp,* 519 U.S. 347, 350–51, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (holding that by "set[ting] forth its limitations in a highly detailed technical manner" and "reiterat[ing] its limitations several times in several different ways," "there [was] good reason to believe that Congress did not want the equitable tolling doctrine to apply").

Jaquay's only misstep in his quest for reconsideration by the BVA and judicial review by the Veterans Court was his directing of the motion for reconsideration to the VARO that had been assisting him develop his claim rather than to the BVA at the address specified in 38 C.F.R. § 20.1001. That regulation was promulgated pursuant to 38 U.S.C. § 7103. A review of that statute does not evince any congressional intent to preclude equitable tolling while motions for reconsideration are pending. According to the Secretary, the regulation is designed to ensure that the BVA actually receives the motions for reconsideration and identifies them as such. In other words, the "must be filed at the following address" language of 38 C.F.R. § 20.1001 is for the administrative convenience of the BVA and simply recognizes that the BVA is not obligated to consider the request until it is received at the specified address. The regulation directed to BVA rehearings does not preclude equitable tolling before the Veterans Court. In addition to providing an address where rehearing petitions are to be received, 38 C.F.R. § 20.1001 also requires that the motion "must" contain several items, including the name of the claimant, the VA file number, and the date of the BVA decision. Surely the inadvertent failure to meet each of these requirements is not intended to foreclose review or to preclude resort to equitable tolling. While 38

C.F.R. § 20.1001 may be mandatory in terms of commencement of BVA reconsideration, it does not necessarily follow that the VA's regulation is jurisdictional with respect to the Veterans Court in the strict legal sense. *Cf. Hallstrom v. Tillamook County,* 493 U.S. 20, 27–28, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) (recognizing the general availability of equitable tolling but not allowing it where statute requires plaintiff to give notice to state and agency prior to commencing lawsuit).

■ When the Veterans Court interpreted 38 C.F.R. § 20.1001 in this case, it applied its case law regarding filing notices of appeal in its court. However, 38 C.F.R. § 20.1001 is not intended to govern the timeliness of appeals to the Veterans Court. Rather, as the Secretary argued to the Veterans Court, "the obvious purpose of requiring motions for reconsideration to be filed with the [BVA in Washington, D.C.] rather than some other entity is to ensure that such motions are actually received by the [BVA], since it is the entity which issued the challenged decision and which has the sole authority for reconsideration of the decision." Equitable tolling in VA misfiling cases merely halts the judicial appeal period until the BVA receives the motion and "amounts to little, if any, broadening of the congressional waiver." *Irwin,* 498 U.S. at 95, 111 S.Ct. 453. For the reasons articulated above, we hold that the "timely filing" needed to abate the finality of an initial BVA decision does not require strict compliance with 38 C.F.R. § 20.1001 and is subject to equitable tolling consistent with *Bailey.*

■ Under *Rosler,* the initial decision of the Board is abated as of the date of the filing of the request for reconsideration for purposes of the 120–day judicial appeal period to the Veterans Court even though the BVA's initial decision remains in place until the Chairman—some time after the

filing of the request for reconsideration— determines that the request meets the standards for reconsideration. We see no reason why a request for reconsideration subject to equitable tolling should be treated any differently. Thus, although a misdirected filing will not commence the reconsideration process until the request for reconsideration is received by the BVA at the address specified in 38 C.F.R. § 20.1001, the finality of the BVA's initial decision nonetheless is subject to abatement for purposes of the 120–day judicial appeal period as of the date of a misdirected filing otherwise subject to equitable tolling.

■ While equitable tolling is available to toll the judicial appeal period of 38 U.S.C. § 7266, a veteran who files an untimely notice of appeal must nevertheless show that he "exercised due diligence in preserving his legal rights." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453. In this case, the Veterans Court found that Jaquay "cannot be said to have exercised the due diligence required to invoke equitable tolling even if such a remedy were available in this Court," noting that "the misfiling here was in no way attributable to any action of VA or its agents." 11 Vet.App. at 73. That statement, however, was made without the benefit of our decision in *Bailey.* Moreover, the statement does not acknowledge that the diligence requirement is more relaxed for cases where the claimant filed a pleading in the wrong place as opposed to filing it after a statutory deadline. Misfiling cases within the veterans' system are unlike the typical late-filing cases where the limitations period expires before the would-be claimants perform any action to preserve their legal rights. *See, e.g., Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1346 (Fed.Cir.1995) (refusing to toll limitations period of 19 U.S.C. § 1514 because claimant's "own lack of diligence caused its

untimely filing"). The filing of the misdirected paper itself satisfies the diligence requirement as a matter of law. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (noting that filing a lawsuit shows diligence on the part of the plaintiff and a desire to begin the case and thereby tolls whatever statutes of limitation would otherwise apply).

█    Since *Irwin,* some of our sister circuits have addressed the diligence requirement in the context of misfiling cases and have reached differing conclusions. *See, e.g., Gibson v. Am. Bankers Ins. Co.,* 289 F.3d 943 (6th Cir.2002); *Perez v. United States,* 167 F.3d 913 (5th Cir.1999); *South v. Saab Cars USA, Inc.,* 28 F.3d 9 (2d Cir.1994). In *Gibson,* a divided Sixth Circuit declined to equitably toll the federal statute of limitations under a flood insurance statute despite the fact that the plaintiffs misfiled the action in state court prior to the expiration of the limitations period. The Fifth Circuit, in *Perez,* reached the opposite conclusion and tolled the limitations period of the Federal Tort Claims Act based, in part, on plaintiffs otherwise timely misfiling in state court. The Second Circuit reached a different conclusion in *South,* holding that delivering a complaint to the county sheriff under the mistaken belief that the sheriff would file the complaint in federal district court does not satisfy *Irwin's* diligence requirement. As can be appreciated from the decisions of our sister circuits, whether one satisfies *Irwin's* diligence requirement simply by filing the right thing in the wrong place is not always clear cut. We, however, need not follow the direction of one circuit or reject the position of another to decide the case before us. This case is unlike the circuit court cases noted above in that the misfiling here took place several steps into a claim for benefits within a government agency. Once the claim left the VA following the denial of the motion for reconsideration by the BVA, it is undisputed that Jaquay acted diligently by filing his notice of appeal within 120 days of the BVA's subsequent decision. The issue is whether the misfiling within the VA of a motion for reconsideration tolls the *Rosler* limitations period until the initial BVA decision is abated by the BVA's receipt of the motion. The veteran-friendly nature of the veterans' benefits system counsels us to construe the diligence requirement as it applies to behavior during the non-adversarial stage of a claim for benefits in favor of the veteran. Misfiling a motion for reconsideration at the VARO from which the claim originated shows that the claimant seeks redress before the Secretary despite the claimant's mistaken belief as to the accuracy of the filing location and does not involve "a garden variety claim of excusable neglect." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453. Once a veteran takes the affirmative act of seeking redress of his claim through a filing with the VARO from which the claim originated, the diligence requirement has been satisfied, and the post-filing activities of the veteran need not be considered. Moreover, it is not unreasonable for veterans to reasonably expect and rely on the VA to fully comply with the comprehensive policies adopted by the agency for the processing of all incoming mail including misdirected mail. *See Department of Veterans Affairs Procedure Manual, M21-1,* Part III § 11.02. Such policies provide reasonable assurances that even misdirected mail will be forwarded or returned in due course and that proceedings will not be unduly delayed even where papers are inadvertently misfiled, provided they are misfiled within the agency itself.

█    Thus, the resulting inquiry here reduces to the question of whether a veteran who seeks redress of a claim and misfiles

his request at the same VARO from which the claim originated thereby actively pursues his judicial remedies, despite the defective filing, so as to toll the 120–day statute of limitations of 38 U.S.C. § 7266. We hold as a matter of law that he does. Thus, Jaquay's filing of his motion for reconsideration of the original BVA decision at the same VARO from which his claim arose within the 120–day judicial appeal period of 38 U.S.C. § 7266 triggered equitable tolling, thereby abating the original decision in accordance with *Rosler* as of the date of the filing at the VARO. Jaquay's subsequent filing of his NOA before the Veterans Court was timely, and the Veterans Court's dismissal for lack of jurisdiction of the appeal as being untimely was erroneous.

Our decision in this case does not involve the application of law to the facts of a particular case. Our jurisdictional mandate does not permit such action. *See* 38 U.S.C. § 7292(d)(2)(B) (2000); *Leonard v. Gober,* 223 F.3d 1374, 1376 (Fed.Cir.2000) ("Because we lack jurisdiction to consider Leonard's arguments regarding the application of equitable tolling to the facts of her case, her appeal is dismissed."). Rather, our holding resolves a contested interpretation of the Veterans Court's jurisdictional statute, 38 U.S.C. § 7266, and its relationship to the regulation directed to the filing of a motion for BVA reconsideration, 38 C.F.R. § 20.1001. The Veterans Court misconstrued its jurisdictional statute by incorporating the detailed provisions of 38 C.F.R. § 20.1001 when evaluating the availability of equitable tolling. It further erred by limiting its equitable tolling analysis to the second prong of *Irwin.* We now reverse those errors and recognize a category of cases in which a veteran shows that he is entitled to equitable tolling under the first *Irwin* prong-namely when he files a motion for reconsideration

with the VARO rather than with the BVA in Washington, D.C.

Because Jaquay finds all the relief he seeks in the first *Irwin* prong, we need not reach the issue of whether Jaquay is entitled to relief under the other *Irwin* prong, specifically whether the VA induced Jaquay to file his motion for reconsideration with the VARO through the arguably ambiguous language of the Appeals Notice. Likewise, we need not and do not reach the broader issue of what other types of misfilings might warrant the application of equitable tolling principles. Moreover, in light of our disposition of the case, we do not reach the specific questions presented in our *sua sponte* order.

## CONCLUSION

For the foregoing reasons, the judgment of the Veterans Court dismissing the case for lack of jurisdiction is reversed, and the case is remanded to the Veterans Court for further proceedings in accordance with this opinion.

*REVERSED AND REMANDED.*