SCHOELEN, Judge,
dissenting:
Although I commend the majority for its lucid treatment of the issue before the Court, I must write separately because I do not believe the majority’s analysis proceeds from the proper foundation. The Supreme Court’s decision in Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) does not change the basis for the Court’s authority to apply equitable tolling to 38 U.S.C. § 7266(a). The Court should apply existing precedent to evaluate whether equitable tolling is warranted in this case to excuse the late filing of the appellant’s NOA. In the alternative, the majority should explain why its departure from existing precedent also forecloses equitable tolling on grounds different from those currently in force.
The majority acknowledges that in Bailey v. West, 160 F.3d 1360 (Fed.Cir.1998) (en banc) the Federal Circuit held that section 7266(a) was subject to equitable tolling, but the majority characterizes that holding as being “on the basis that section 7266 was more like a statute of limitations in nature than a jurisdictional requirement and that the Supreme Court had not provided a distinction between the two.” Ante at 219 (citing 160 F.3d at 1364). The majority goes on to state that “[i]n Bowles, the Supreme Court provided the distinction between statutes of limitation and jurisdictional requirements not found in Irwin [v. Department of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)] and held that in civil cases statutory time periods limiting the time for filing an NOA are jurisdictional in the strict sense and are not subject to equitable *222 tolling.” Ante at 219 (citing Bowles, 127 S.Ct. at 2365). I do not believe that Bowles provides any such distinction or adds any clarity to this area of the law, and I believe the majority’s analysis overlooks several significant aspects of Bowles, Bailey, and this Court’s place in the adjudication of veterans benefits claims.
Basing its analysis on Irwin, the Federal Circuit in Bailey concluded that, “absent a contrary congressional expression, the Court [of Appeals for Veterans Claims] would be entitled to toll the statute of limitations found in section 7266.” 160 F.3d at 1365. Here, the majority explains that recent Supreme Court precedent has stated that Irwin “survives” Bowles (ante at 220, n. 2 (citing John R. Sand & Gravel v. United States, — U.S. -, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008))), but the majority then concludes that section 7266(a) “is properly classified as a jurisdiction conferring statute because it represents a limitation on a governmental waiver of sovereign immunity and is not designed to protect a defendant’s ‘case specific interest in timeliness,’ as is the case with a claims processing rule or statute of limitations.” Ante at 220, n. 2 (citing John R. Sand & Gravel, 128 S.Ct. at 753). The majority’s explanation of Irwin’s continued role in equitable tolling jurisprudence does not explain how Bowles — or any other case — changes the analysis of the governmental waiver of sovereign immunity that the Federal Circuit undertook in Bailey, and reaffirmed in Jaquay v. Principi, 304 F.3d 1276 (Fed.Cir.2002) (en banc) and in Kirkendall v. Dep’t of the Army, 479 F.3d 830, 842-44 (Fed.Cir.2007) (en banc), cert. denied, — U.S. -, 128 S.Ct. 375, 169 L.Ed.2d 260 (2007).[1] Indeed, in Bailey, the Federal Circuit stated that “courts have recognized statutes of limitations as limits to grants of jurisdiction,” 160 F.3d at 1363 (emphasis added), and confirmed that analysis of section 7266 in this regard required the court to “go beyond the placement and nomenclature that Congress chose to express the metes and bounds of the waiver of immunity.” Id. (emphasis added). I believe that language signifies that the Bailey decision already explored the jurisdictional nature and scope of the waiver of sovereign immunity of section 7266(a), and this Court should follow that analysis.
The majority instead concludes that Bowles supersedes this sovereign immunity analysis because Bowles holds that “[t]he timely filing of [an NOA] in a civil case is a jurisdictional requirement,” ante at 219 (emphasis added) (quoting Bowles, 127 S.Ct. at 2366), and proceedings at this Court are “civil actions,” ante at 219. I *223 have two objections to the majority’s determinations in this regard.
First, I believe the majority reads Bowles without sufficient consideration of the statutory scheme that Bowles actually addresses. Bowles is about the jurisdiction of the United States Courts of Appeals constituted under Article III of the Constitution. Those courts “shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.” 28 U.S.C. § 1291. Boioles addresses Rule 4 of the Federal Rules of Appellate Procedure, of which section 4(a) governs appeals in civil cases and section 4(b) governs appeals in criminal cases. See Fed. R.App. P. 4. Rule 4, according to Bowles, “carries [28 U.S.C.] § 2107 into practice.” Bowles, 127 S.Ct. at 2363. Section 2107 of title 28, U.S.Code, in turn provides that “no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals ... unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree,” 28 U.S.C. § 2107(a), and also provides a mechanism by which a district court may “upon motion ... extend the time for appeal upon a showing of excusable neglect or good cause ... for a period of 14 days from the date of entry of the order reopening the time for appeal.” 28 U.S.C. § 2107(c). Section 2107 makes no mention of criminal proceedings.
This entire construct depends on the prior issuance of a final decision of a U.S. district court. Rule 4 and section 2107 are not implicated until there is a final decision of a district court, according to section 1291. Once the district court’s decision is final, should a party wish to appeal, the timing provisions of Rule 4 and section 2107 become relevant, and only then does it matter whether the case is a civil case or a criminal case because that distinction triggers the applicability (or not) of section 2107 and Rule 4(a) — and by extension the applicability of the holding in Bowles. Thus, Bowles governs the jurisdiction of an Article III appellate court reviewing a final decision of a district court in a civil, rather than criminal, case.
Furthermore, Bailey already includes analysis enabling this Court to distinguish the holding of Bowles from our jurisprudence: The Federal Circuit stated that Federal Rules of Appellate Procedure 4 and 26(b), as well as 28 U.S.C. § 2107, “govern appeals from Article III district courts and are inapplicable to the Court of [Appeals for Veterans Claims], an Article I court.” See Bailey, 160 F.3d at 1367. This Court is not a district court or court of appeals constituted under Article III, nor is the Board of Veterans’ Appeals — the adjudicative body whose decisions this Court reviews — an Article III district court. See 38 U.S.C. § 7252(a) Although I agree with the majority’s characterization of the proceedings in this Court as “civil,” I do not believe that use of the term “civil case” in Bowles equates this Court’s proceedings to those proceedings at issue in Bowles because Boivles deals with the Article III courts’ appellate mechanism in civil cases, which differs from the mechanism by which cases are brought to this Court. As a consequence, I do not believe the Supreme Court’s use of the term “notice of appeal” in Bowles is interchangeable with the use of the term in 38 U.S.C. § 7266(a), and I remain unconvinced that Bowles compels the result reached today. See Jaquay, 304 F.3d at 1286 (“[T]he filing of a notice of appeal at the Veterans Court, like the filing of a complaint in a trial court, is the first action taken by a veteran in a court of law.”); see also 38 U.S.C. § 7292(a) (stating that review of this Court’s decisions by the Federal Circuit “shall be obtained by filing a notice of *224 appeal with the Court of Appeals for Veterans Claims within the time and in the manner prescribed for appeals to United States courts of appeals from United States district courts”).[2]
My second objection to the majority’s approach is that, once the majority concludes that Bowles has superseded Bailey and, by extension, Irwin, it fails to account for the possibility that other grounds may exist to support equitable tolling of section 7266(a)’s deadline. In Bailey, the Federal Circuit noted that, since the introduction of judicial review of VA benefits determinations wrought by the Veteran’s Judicial Review Act, Pub.L. No. 100-687, 102 Stat. 4105 (1988), “it appears the system has changed from ‘a nonadversarial, ex parte, paternalistic system for adjudicating veterans’ claims,’ to one in which veterans ... must satisfy formal legal requirements, often without the benefit of legal counsel, before they are entitled to administrative and judicial review.” Bailey, 160 F.3d at 1365 (quoting Collaro v. West, 136 F.3d 1304, 1309-10 (Fed.Cir.1998)). Also, concurring in Bailey, Judge Michel explained that the Court of Appeals for Veterans Claims “operates in a unique, paternalistic administrative environment,” Bailey, 160 F.3d at 1368 (Michel, J., concurring), and that the Bailey decision itself “should be understood as derived from this uniquely benevolent statutory framework,” id. at 1369. He summarized his views by stating that
[t]he Board of Veterans’ Appeals, of course, is not a trial court and the Court of [Appeals for Veterans Claims], while surely an appellate court, is an Article I court set in a sui generis adjudicative scheme for awarding benefit entitlements to a special class of citizens, those who risked harm to serve and defend their country. This entire scheme is imbued with special beneficence from a grateful sovereign. On this basis alone, I would allow tolling by the Court of [Appeals for Veterans Claims].
Id. at 1370.
The majority alludes to such statements by “recognizing] the beneficent foundation that, in part, led the Federal Circuit to apply equitable tolling,” ante at 220, but finds it insufficient as a basis to reject the Bowles construction of “the jurisdictional importance of eongressionally imposed periods of appeal,” ante at 221. As I explained above, an appeal in the Article III courts is fundamentally different from an appeal to this Court. I suggest that this Court should confront that difference, and should account for the fact that it is “set in a sui generis adjudicative scheme,” id., and that, in order to obtain review in this Court, a claimant must “satisfy formal legal requirements, often [and, as in this case when Mr. Henderson filed his NOA,] without the benefit of legal counsel.” Bailey, 160 F.3d at 1365. In creating this Court to provide judicial review of final decisions of the Board of Veterans’ Appeals, did Congress truly intend for this Court’s jurisdiction to be limited by a temporal restriction in the face of extraordinary circumstances, in the same way that the Article III courts of appeals’ jurisdiction is limited?
The Supreme Court has held that interpretive doubt in veterans benefits statutes should be resolved in the veteran’s favor. *225 See Brown v. Gardner, 513 U.S. 115, 117-18, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); King v. St. Vincent’s Hosp., 502 U.S. 215, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991); see also Kirkendall, 479 F.3d at 843 (“Even if this were a close case ... the canon that veterans’ benefits statutes should be construed in the veteran’s favor would compel us to find that [the statute in question] is subject to equitable tolling.”). For the reasons described above, I have doubts that Congress intended this Court’s review to be circumscribed in the way the Court today concludes it must be. When there is doubt, should we not construe the statute in the veteran’s favor?

. The majority states that John R. Sand & Gravel explains that any "anomaly created by Irwin and other cases merely reflects 'a different judicial assumption about the comparative weight Congress would likely have attached to competing legitimate interests.’ ” Ante at 220, n. 2 (citing John R. Sand & Gravel, 128 S.Ct. at 750). John R. Sand & Gravel does state that proposition, but it does so in the context of reaffirming Irwin and explaining that Irwin did not create a conflict with an older line of cases sufficiently grave to justify concluding that the older cases were overruled. See John R. Sand & Gravel, 128 S.Ct. at 755 (describing the critical difference between the statute reviewed in Irwin and the statute reviewed in John R. Sand & Gravel: The statute in Irwin, "while similar to the present statute in language, is unlike the present statute in the key respect that the Court had not previously provided a definitive interpretation”). Thus, the discussion in John R. Sand & Gravel, cited by the majority, amounts to a reaffirmation, through stare decisis, of Irwin, as well as the cases upon which the John R. Sand & Gravel holding was based. I therefore conclude that, rather than undermining or narrowing Irwin and cases based upon it, John R. Sand & Gravel reaffirms Irwin’s vitality.'

. Indeed, if anything, Bowles supports the Federal Circuit's practice of refusing to allow equitable tolling for appeals from this Court to the Federal Circuit, as the statute governing those appeals dictates that they be undertaken "within the time and in the manner prescribed for appeals to United States courts of appeals from United States district courts." 38 U.S.C. § 7292(a); see also Oja v. Dep’t of the Army, 405 F.3d 1349, 1358 (Fed.Cir.2005).