SCHOELEN, Judge,
concurring:
Although I concur with my colleagues’ conclusion that Mr. Rickett’s NOA, misfiled at the OGC within the 120-day judicial appeal period, along with the Court’s subsequent receipt of the NOA, warrants equitable tolling,[13] I respectfully dissent from that part of the decision that adopts a totality-of-the-circumstances approach to examining whether an appellant who timely misfiles an NOA at the RO, the Board, or, as in this case, the OGC, demonstrates due diligence in preserving his rights. In Brandenburg v. Principi, the Federal Circuit examined the circumstances when equitable tolling had previously been applied in timely misfiling cases, noting that “the focus was whether the veteran ‘exercised due diligence in preserving his legal rights,’ ... and whether ‘the veteran’s intention is clear and ... [VA] is put on notice of his intention to seek further review of his claim.’ ” 371 F.3d 1362, 1364 (Fed.Cir.2004) (alteration in original) (citations omitted) (quoting Jaguay v. Principi, 304 F.3d 1276, 1287 (Fed.Cir.2002), and Bailey (Edward) v. Principi, 351 F.3d 1381, 1385 (Fed.Cir.2003)). The Federal *233 Circuit unequivocally stated: “If the veteran meets both criteria, ‘an error in the form or in the office to which [notice] is sent, or both, is not sufficient to render the filing ineligible for consideration under the equitable tolling doctrine.’ ” Id. (alteration in original) (quoting Bailey (Edward), 351 F.3d at 1385).
A. Conflict With Existing Precedent
The majority now adopts an analysis for determining whether equitable tolling is appropriate, which the Federal Circuit has indicated does not apply to timely misfiled appeals to this Court. That is, although the Federal Circuit did not examine the postmisfiling activities of the veteran in Brandenburg, supra; Bailey (Edward), supra; and Santana-Venegas v. Principi, 314 F.3d 1293 (Fed.Cir.2002), when assessing whether the veteran satisfied the due diligence requirement, the majority, for the first time, requires an examination of the actions taken by a prospective appellant after learning that he misfiled an NOA.
My colleagues attempt to explain their expansion of the Federal Circuit’s holdings in Brandenburg, Bailey (Edward), and Santana-Venegas, all supra, which involved the timely misfiling of an NOA at the RO or the Board, by (1) examining the differences between a timely misfiled motion for reconsideration of a Board decision by the Board Chairman, see Jaguay, supra, and a timely misfiled NOA, and (2) assigning significance to the Federal Circuit’s silence in Brandenburg and Santana-Venegas. See ante at 222 (noting that “those cases did not contain the explicit statement of Jaguay that postmisfiling actions were not relevant”). Undoubtedly, there are several differences between a motion for Board reconsideration, an internal VA matter, and an NOA to the Court. See, e.g., Jaguay, 304 F.3d at 1283-87 (examining the difference between motions for Board reconsideration and NOAs to the Court); see also 38 U.S.C. § 7266(a); 38 C.F.R. § 20.1001 (2012). Despite these variances, an examination of the Federal Circuit’s decisions demonstrates that the postmisfiling actions of the prospective appellant were not relevant to the Court’s due diligence assessment — but, even assuming there was any doubt, I would resolve that doubt in favor of the veteran. See Henderson v. Shinseki, — U.S.-, 131 S.Ct. 1197, 1205, 179 L.Ed.2d 159 (2011) (noting that Congress’s solicitude for veterans is longstanding and “plainly reflected in the [Veterans’ Judicial Review Act], as well as in subsequent laws that ‘place a thumb on the scale in the veteran’s favor in the course of administrative and judicial review of VA decisions,’ ” quoting Shinseki v. Sanders, 556 U.S. 396, 416, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (Souter, J., dissenting)).
1. Jaquay and Santana-Venegas
In Jaguay, the Federal Circuit observed that there was a split among its sister circuits, “whether one satisfies Irwin’s diligence requirement simply by filing the right thing in the wrong place” and that the decision is “not always clear cut.” 304 F.3d at 1288; see Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (noting that equitable tolling is generally available in two situations: (1) “where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period,” or (2) “where the complainant has been induced or tricked by his adversary’s misconduct into allowing the filing deadline to pass”). Nonetheless, the Federal Circuit reasoned that it need not get entwined in the split because Jaguay’s case was different: the misfiling “took place several steps into a claim for benefits.” Jaguay, 304 F.3d at 1288. Noting that “Misfiling cases within the veterans’ *234 system are unlike the typical late-filing cases,” the Court stated that “[t]he filing of the misdirected paper itself satisfies the diligence requirement as a matter of law.” Id. at 1287, 1288 (emphasis added).
Subsequently, in Santana-Venegas, the Federal Circuit addressed for the first time whether a veteran was entitled to equitable tolling when he misfiled an NOA at the RO from which his claim originated. 314 F.3d at 1293. The Federal Circuit found that the veteran acted diligently when he misfiled his NOA within 120 days of the Board’s decision and held, as a matter of law, “that a veteran who misfiles his or her [NOA] at the same [RO] from which the claim originated within the 120-day judicial appeal period of 38 U.S.C. § 7266[ ] thereby actively pursues his or her judicial remedies, despite the defective filing, so as to toll the statute of limitations.” Id. at 1298. In determining that Mr. Santana-Venegas satisfied the due diligence requirement, the Federal Circuit did not differentiate between Mr. Jaquay’s misfiled motion for reconsideration by the Board Chairman and Mr. Santana-Venegas’s misfiled NOA. See id. at 1297-98. Instead, the Federal Circuit stated:
In the context of the non-adversarial manifestly pro-claimant veterans’ benefits system, and consistent with our decisions in Jaguay and Bailey [ (Harold) v. West, 160 F.3d 1360 (Fed.Cir.1998) (en banc) ], misfiling a[n NOA] at the [RO] from which the claim originated shows that the claimant seeks redress before the Secretary despite the claimant’s mistaken belief as to the accuracy of the filing location and does not involve “a garden variety claim of excusable ne-gleet.” Irwin, 498 U.S. at 96, 111 S.Ct. 453; see also Bailey [ (Harold) ], 160 F.3d at 1365. Once a veteran takes the affirmative act of seeking redress of his or her claim through a filing with the [RO ] from which the claim originated rather than the Veterans Court, “[t]he filing of the misdirected paper itself satisfies the diligence requirement as a matter of law.”
Id. (emphasis added) (quoting Jaguay, 304 F.3d at 1288 (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962))).
Notwithstanding Santana-Venegas’s wholesale adoption of Jaguay and its determination that the diligence requirement was “ satisfie[d] ... as a matter of law,’ ” the majority improvidently limits the effect of a timely misfiling. Id. at 1298 (emphasis added) (quoting Jaguay, 304 F.3d at 1288 (citing Goldlawr, 369 U.S. at 467, 82 S.Ct. 913)). Although the majority purportedly accepts the Federal Circuit’s holdings that an appellant demonstrates due diligence as a matter of law through the timely misfiling of an NOA, the majority holds that the appellant does so only with respect to “the point in time when he or she files an NOA within the 120-day appeal period at the RO from which the claim originated, the Board, or possibly other locations within VA.” Ante at 222 (emphasis added). The majority states that “a prospective appellant’s actions taken after learning of the misfiling are factors in the ‘relaxed’ due diligence assessment.” Ante at 222. Not only is this assessment unsupported by Federal Circuit precedent,[14] it unnecessarily obfus *235 cates an area that had been clear and unambiguous.

2. Uncertainty and Confusion Created by the Majority’s Relaxed Due Diligence Requirement

First and foremost, my colleagues fail to provide the Court with any guidance to determine in the future whether a prospective appellant demonstrates “relaxed” due diligence. Whereas a prospective appellant previously satisfied the due diligence requirement, as a matter of law, by showing that he misfiled an NOA at the RO or the Board within the 120-day judicial appeal period, the majority creates a separate, distinct period during which a prospective appellant must demonstrate “relaxed” due diligence — after learning that an NOA was misfiled — but fails to provide any indicia of what actions — short of refiling the NOA at the Court — the prospective appellant must take to satisfy this burden. Indeed, the facts in Mr. Rickett’s case demonstrate that he filed his NOA with the Court on the same day that he learned of the misfiling.
Second, by requiring an examination of this separate, distinct period, the majority creates an additional evidentiary hurdle for the pro se prospective appellant — to prove when he first acquired knowledge that his NOA was misfiled. Presumably, this would need to be determined as part of the majority’s newly imposed “relaxed” due diligence assessment. However, they fail to articulate what standard the Court should employ to assess when a prospective appellant learned of the misfiling.[15] See ante at 225 (stating that it is undisputed that Mr. Rickett contacted the Court *236 approximately one-month after the 120-day appeal period expired and filed a new NOA “promptly upon learning his mistake”).

3. New Barrier to Judicial Review Does Not Accomplish Goal

The rule adopted by the majority today may serve to deny many pro se prospective appellant’s access to judicial review, where existing precedent otherwise would not have resulted in a similar bar. Nonetheless, my colleagues attempt to explain their holding by stating that “equitabl[e] tolling ... cannot be based solely on a timely misfiling at any location outside the Court, possibly followed by inaction for many years after learning of the misfiling” because “[t]o do so would subjugate the important [procedural] rule that requires filing of a timely NOA with the Court to the control of others and give little meaning to the term ‘relaxed due diligence’ and the requirement that prospective appellants diligently pursue judicial review to invoke equitable tolling.” Ante at 223 (emphasis added). If they are concerned that we would have to consider an appeal that languished for years after a timely misfiling before an NOA reaches the Court, then their focus on the prospective appellant’s actions during the period between learning that an NOA was timely misfiled and the eventual filing at the Court does not address this concern. If their concern is to “give meaning” to the term “relaxed due diligence” their decision negates this concern. Ante 220 (stating that Santana-Venegas and Jaquay indicated that the due diligence requirement for equitable tolling is “relaxed” when a pro se prospective appellant timely misfiles a pleading). With no disrespect to my esteemed colleagues, I am perplexed by their characterization of this assessment as “relaxed,” when their decision creates at least one additional obstacle in the path of the pro se veteran’s right to judicial review and alludes to others. Moreover, it ignores the Federal Circuit’s explicit refusal in Jaquay, followed in Santana-Venegas, to get involved in the split among its sister circuits to determine whether one satisfies due diligence by “filing the right thing in the wrong place,” because “[m]isfiling cases within the veterans’ system are unlike the typical late-filing cases.” Jaquay, 304 F.3d at 1287, 1288; see also Santana-Venegas, 314 F.3d at 1297-98; see generally Henderson, 131 S.Ct. at 1205-06 (noting that “[t]he contrast between ordinary civil litigation ... and the system that Congress created for the adjudication of veterans’ benefits claims could hardly be more dramatic” and that “[r]igid jurisdictional treatment of the 120-day period for filing a[n NOA] in the Veterans Court would clash sharply with this scheme”); Bailey (Harold), 160 F.3d at 1368 (Michel, J., concurring) (noting that both the Supreme Court and the Federal Circuit “have long recognized that disputes that arise in this system are subject to procedural and other rules that are distinctly advantageous to the veteran claimant”).
Thus, to the extent that the majority suggests that it may be appropriate to examine the period between the misfiling and the prospective appellant’s learning that the NOA was misfiled, I believe that such a requirement is particularly inappropriate at a time when VA takes 866 days[16] to process an appeal from the time a claimant files a Notice of Disagreement to issuance of a final Board decision. An unfortunate reality of the VA benefits system is that veterans are conditioned to wait years *237 for responses to their claims and appeals. Although the Court is independent from VA, this fact is not apparent to many pro se appellants. As a result, it is not unreasonable that prospective appellants, who are accustomed to waiting, may expect to wait a long time for a response or not know or think to follow up on an NOA.
B. Conclusion
Our existing precedent establishes that, as long as a prospective appellant’s intention is clear, VA is put on notice of his intention to seek further review of his claim, and the prospective appellant satisfies the due diligence requirement through the defective filing, that is the end of the matter. See Brandenburg, Bailey (Edward), and Santana-Venegas, all supra. Therefore, although I concur in the result reached by the majority, I must respectfully dissent from its holding that “the due diligence assessment, which is ‘relaxed’ in cases of timely misfilings by pro se, prospective appellants, is based on the totality of the circumstances surrounding the misfiling and actions taken after learning of the misfiling.” Ante at 222.

. As a result, I also agree with the majority that this Court's decision in Reed v. Principi, 17 Vet.App. 380 (2003) — to the extent that it "stands for the proposition that equitable tolling based on a misfiled NOA applies only when the misfiling is at the RO that processed the claim or at the Board, or that timely misfilings at the OGC are not subject to equitable tolling per se, such holdings” — should be overturned. Ante at 218.

. The majority asserts that their view is not inconsistent with Federal Circuit precedent by emphasizing the Federal Circuit’s failure to state that the prospective appellant's post-misfiling actions were not relevant in Brandenburg and Santana-Venegas, and alludes to an implicit finding that the appellants had demonstrated diligence after learning of the misfiling, by stating that "those decisions specifically noted die time between the appellant learning of the misfiling and the proper filing at the Court." Ante at 222. This suggestion *235 is not persuasive for two reasons. First, just as Brandenburg and Santana-Venegas do not find a lack of postmisfiling diligence, they also do not contain any affirmative finding that the appellant demonstrated due diligence after learning of the misfiling. Second, nowhere in the Federal Circuit’s analysis whether equitable tolling was warranted was the length of time between learning of the misfiling and proper filing at the Court pertinent to its discussion. See Santana-Venegas, 314 F.3d at 1297 (concluding that "Mr. Santana-Venegas acted diligently by filing his [NOA ] within 120 days of the [Board’s ] decision ... at the [RO] from which the claim originated” (emphasis added)); see also Brandenburg, 371 F.3d at 1364 (finding "no meaningful difference” between a misfiling at the Board and a misfiling at the RO).
Moreover, although the facts in Bailey (Edward), 351 F.3d at 1383, indicate that the appellant did not follow up with the Court until nearly six months after the RO received his timely misfiled NOA, the Federal Circuit did not suggest that these facts were pertinent to a determination whether due diligence had been satisfied. Instead, the Federal Circuit held "as a matter of law, [that] a veteran who attempts to file a[n NOA] by completing a document that is clearly intended to serve as a[n NOA] and who has that document delivered to the [RO] from which the veteran’s claim originated within the 120-day statutory period for appeal is entitled to invoke the doctrine of equitable tolling.” Id. at 1385 (emphasis added).

. My colleagues repeatedly emphasize the matters that are not decided in this decision: (1) ”[T]he Court will not now endeavor to provide an exhaustive list of factors to consider in a due diligence analysis” {ante at 220); (2) ”[W]e decline to address and leave for another day the question whether relaxed due diligence is required for the period between a timely misfiling and learning that the NOA was misfiled in the wrong location,” but observing that Mr. Rickett's actions during that period would appear to have satisfied that requirement.” {ante at 222 n. 5); (3) reiterating that “we decline to address in this decision whether relaxed due diligence was required of Mr. Rickett between his timely misfiling at the wrong location and his learning that he had misfiled” {ante at 225 n. 7 (emphasis added)). My colleagues' statement that they "decline to address” a question that was not raised by the parties and which represents a significant departure from the Federal Circuit's established precedent certainly alludes to more impending hurdles being placed in the pro se veteran’s path to judicial review.

. See 2012 Department of Veterans Affairs Performance and Accountability Report (Nov. 15, 2012); http://www.va.gov/budget/reporl/.