MAYER, Circuit Judge,
with whom MICHEL, Chief Judge, and NEWMAN, Circuit Judge,
join, dissenting.
“Courts do not normally overturn a long line of earlier cases without mentioning the matter.” John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 137, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (“Sand & Gravel”). Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), did not mention — much less overrule — the Supreme Court’s long line of cases affirming the application of equitable tolling. And our sister circuit courts of appeals have concluded that the doctrine of equitable tolling survives Bowles and applies to statutory filing deadlines. See Ross-Tousey v. Neary, 549 F.3d 1148 (7th Cir.2008); Diaz v. Kelly, 515 F.3d 149 (2d Cir.2008); Coker v. Quarterman, 270 Fed.Appx. 305 (5th Cir.2008). For this court to stake out the opposite position is lamentably unsupportable.
I.
No legal system can function without deadlines, but the majority’s eradication of equitable tolling in proceedings before the United States Court of Appeals for Veterans Claims (“Veterans Court”) creates a Kafkaesque adjudicatory process in which those veterans who are most deserving of service-connected benefits will frequently be those least likely to obtain them. It is the veteran who incurs the most devastating service-connected injury who will often be the least able to comply with rigidly enforced filing deadlines. Under the majority’s approach, this veteran will be both “out of luck and out of court,” since failure to comply with the 120-day deadline prescribed in 38 U.S.C. § 7266(a) means that he forfeits all right to judicial review of his claim.
Two en banc panels of this court have held that the time limit for filing an action under section 7266(a) at the Veterans Court is subject to equitable tolling. See Jaquay v. Principi, 304 F.3d 1276 (Fed.Cir.2002); Bailey v. West, 160 F.3d 1360 (Fed.Cir.1998). We have recognized that “[i]t would be both ironic and inhumane to rigidly implement section 7266(a) because the condition preventing a veteran from timely filing is often the same illness for which compensation is sought.” Barrett v. Principi, 363 F.3d 1316, 1320 (Fed.Cir.2004).
Although a majority of this court now wants to jettison this well-established, salutary precedent, Bowles provides a very *1222 flimsy foundation for doing so. Bowles neither addresses nor undermines this court’s rationale for permitting equitable tolling in actions brought in the Veterans Court. The application of equitable tolling under section 7266(a) flows directly from the Supreme Court’s decision in Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Irwin was not — and could not have been — at issue in Bowles. The Irwin presumption of equitable tolling applies only when the federal government is the defendant in an action. 498 U.S. at 95-96, 111 S.Ct. 453. In Bowles, on the other hand, a state prisoner brought a federal habeas petition, and the state, not the federal government, was the defendant. See 551 U.S. at 207, 127 S.Ct. 2360. Irwin’s, equitable tolling principles were therefore clearly not at issue in Bowles, and it is for this reason that the majority opinion there did not cite, much less seek to distinguish, Irwin. It was because the doctrine of equitable tolling was not available that the petitioner in Bowles attempted to rely on the “unique circumstances” doctrine to excuse his untimely filing. See Bowles, 551 U.S. at 213-14, 127 S.Ct. 2360; see also Sierra Club N. Star Chapter v. Peters, 2008 WL 2152199, at *8, No. 07-2593, 2008 U.S. Dist. LEXIS 39966, at *21 (D.Minn. 2008) (concluding that Bowles is simply “not relevant” to the application of equitable tolling under Irwin).
If there was any doubt that Bowles left the Irwin doctrine of equitable tolling unscathed, it was dispelled by the Supreme Court’s recent decision in Sand & Gravel. There the Court reaffirmed the continuing vitality of the Irwin presumption of equitable tolling, although the Court ultimately concluded that the presumption had been rebutted with respect to the filing of suit under 28 U.S.C. § 2501 at the United States Court of Federal Claims.[1] Sand & Gravel, 552 U.S. at 133-38, 128 S.Ct. 750. Simply put, “Irwin remains good law.” Santos v. United States, 559 F.3d 189, 197 (3d Cir.2009). Because our application of equitable tolling at the Veterans Court flows directly from Irwin, nothing in Bowles provides a sufficient basis for casting aside our long-established equitable tolling jurisprudence.
The majority seizes upon the following sentence from Bowles: “Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement.” 551 U.S. at 214, 127 S.Ct. 2360. When read in context, however, it is clear that this statement means only that the appellate filing deadline set by Rule 4 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2107(a) is jurisdictional in nature.[2] Bowles begins its analysis by stating that it is addressing the question of “whether the Court of Appeals lacked jurisdiction to entertain an appeal filed outside the 14-day window allowed by § 2107(c).” 551 U.S. at 209, 127 S.Ct. 2360. The Court then proceeds to answer that narrow question by analyzing cases appealed from one Article III court to another Article III court. Over and over again in its relatively brief opinion, the Supreme Court focuses on appeals from a district court to a court of appeals. See id. at 210, 127 S.Ct. 2360 (“[E]ven prior to the creation of the circuit courts of appeals, this Court regarded statutory limitations *1223 on the timing of appeals as limitations on its own jurisdiction.” (emphasis added)); id. (“[T]he courts of appeals routinely and uniformly dismiss untimely appeals for lack of jurisdiction.” (emphasis added)); id. at 213, 127 S.Ct. 2360 (“Bowles’ failure to file his notice of appeal in accordance with the statute ... deprived the Court of Appeals of jurisdiction.” (emphasis added)). Notably, each of the cases cited by the Court to support its conclusion that the filing of a notice of appeal within a statutorily prescribed period is “mandatory and jurisdictional” involved appeals from one Article III court to another. Id. at 209-10, 127 S.Ct. 2360. Because Bowles is limited, by its facts and the cases upon which it relies, to appeals from one Article III court to another, it does not speak to the separate issue of whether equitable tolling applies to judicial review of agency decisions.
A fundamental fallacy underlying the majority’s approach to section 7266(a) is that it confuses extending a limitations period with suspending one. Bowles addressed the question of whether a district court could extend the statutory time limit for reopening an appeal from fourteen to seventeen days. 551 U.S. at 209-10, 127 S.Ct. 2360. Tolling does not extend any statutory deadline; instead it “temporarily halts” the running of the statutory clock. See Jaguay, 304 F.3d at 1281 n. 2. “Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.” United States v. Ibarra, 502 U.S. 1, 4 n. 2, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991). While Bowles considered the question of whether a district court had authority to extend a statutory deadline for filing an appeal, it said nothing about whether a particular limitations period could be suspended because of equitable considerations. Here, the relevant inquiry is not whether the Veterans Court can extend the 120-day filing period, but whether the running of the statutory period is suspended during periods when a veteran is physically or mentally incapacitated.
A second significant difficulty with the majority’s approach is that it applies Bowles to the wrong filing deadline. Bowles addresses the jurisdictional significance of the time limit for appealing a district court decision to a court of appeals. In the veterans’ adjudicatory system, an appeal from the Veterans Court to this court is the procedural equivalent of an appeal from a district court to a court of appeals. See 38 U.S.C. § 7292 (providing that appeals from the Veterans Court to this court are to be taken “within the time and in the manner prescribed for appeals to United States courts of appeal from United States district courts”). Thus, even assuming arguendo that Bowles can be extended to the system for adjudicating veterans’ claims, it would make the time limit for appealing from the Veterans Court — instead of the time limit for appealing to the court — jurisdictional in nature. See Henderson v. Peake, 22 Vet.App. 217, 224 n. 2 (2008) (Schoelen, J., dissenting) (“[I]f anything, Bowles supports the Federal Circuit’s practice of refusing to allow equitable tolling for appeals from [the Veterans Court] to the Federal Circuit.”).
The third and most important error infecting the majority’s analysis is that it fails to properly differentiate between deadlines for bringing suit and those for filing appeals. A trial court’s judgment is presumed “correct and final, except only for such review and revision as are specified in the statute authorizing and establishing the pre-conditions for appeal.” *1224 Bailey, 160 F.3d at 1370 (Michel, J., concurring). Thus, an “appellate eourtfs] power of review is sharply limited, for judgments are reviewable only if both final and adverse to the party appealing and ... filed within the time required by statute.” Id. This is precisely what Bowles recognizes: if an appeal of a court’s judgment “has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction.” 551 U.S. at 213, 127 S.Ct. 2360 (citations and internal quotation marks omitted); see Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). (Filing an appeal of a district court decision “is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.”).
In contrast to time limits for appeal, deadlines for bringing suit are generally not deemed jurisdictional. They are instead viewed as statutes of limitations, subject to equitable tolling. See Sand & Gravel, 552 U.S. at 133, 128 S.Ct. 750 (“Most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims” and “typically permit courts to toll the limitations period in light of special equitable considerations.”); Rotella v. Wood, 528 U.S. 549, 560, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (“[Fjederal statutes of limitations are generally subject to equitable principles of tolling”). The Supreme Court has made clear that time limits for seeking initial court review of adverse agency actions are generally classified as statutes of limitations rather than jurisdictional bars. In Bowen v. City of New York, 476 U.S. 467, 480-81, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the Court unanimously ruled that equitable tolling applies to the statutory sixty-day period for bringing an action in district court to review a denial of Social Security disability benefits by the Secretary of Health and Human Services. Likewise, in Irwin, the Court held that equitable tolling applies to the statutory thirty-day period for seeking review in district court of a final action by the Equal Employment Opportunity Commission (“EEOC”). 498 U.S. at 95-97, 111 S.Ct. 453.
Just as the statutes construed in Bowen and Irwin, section 7266(a) provides a time limit for seeking initial court review of an adverse agency action. See Jaguay, 304 F.3d at 1286 (“[T]he filing of a notice of appeal at the Veterans Court, like the filing of a complaint in a trial court, is the first action taken by a veteran in a court of law.”). Furthermore, like the Social Security benefits scheme involved in Bowen and the employment discrimination scheme addressed in Irwin, the veterans’ benefits system is an adjudicatory framework “that Congress designed to be unusually protective of claimants.” Bowen, 476 U.S. at 480, 106 S.Ct. 2022 (internal quotation marks omitted); see Jaguay, 304 F.3d at 1280 (“Congress has created a paternalistic veterans’ benefits system to care for those who served their country in uniform.”). Because section 7266(a) is similar in most important respects to the statutes at issue in Bowen and Irwin, and is fundamentally different from that addressed in Bowles, it is properly viewed as a statute of limitations rather than a rigid jurisdictional bar.
Stone v. Immigration & Naturalization Service, 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995), upon which the majority relies, is not to the contrary. Stone held that the time limit for appealing a final deportation order issued by the Board of Immigration Appeals is not amenable to equitable tolling. Id. at 405, 115 S.Ct. 1537. Removal proceedings, howev *1225 er, “closely resemble a trial” and “are adversarial and employ many of the same procedures used in Article III courts.” Frango v. Gonzales, 437 F.3d 726, 728 (8th Cir.2006) (citations and internal quotation marks omitted); Etchu-Njang v. Gonzales, 403 F.3d 577, 583 (8th Cir.2006) (contrasting “adversarial” removal proceedings with “inquisitorial” Social Security benefit proceedings). Because the appeal of a final deportation order is very similar to an appeal from a district court decision, it is not surprising that the Court determined that the deadline for appealing a deportation order is not subject to equitable tolling. Indeed, Stone itself recognizes that its decision to preclude equitable tolling was an aberration, and the general rule is that tolling applies to time limits for bringing suit against the federal government. 514 U.S. at 398, 115 S.Ct. 1537 (“Underlying considerations of administrative and judicial efficiency ... support our conclusion that Congress intended to depart from the conventional tolling rule in deportation cases.”)
When a veteran brings a claim before the Board of Veterans’ Appeals (“board”), “the relationship between the veteran and the government is non-adversarial and pro-claimant.” Jaguay, 304 F.3d at 1282. Thus, unlike deportation actions, proceedings before the board are fundamentally unlike proceedings before a district court. See Bailey, 160 F.3d at 1370 (Michel, J., concurring) (explaining that the board “is not a trial court”); Forshey v. Principi, 284 F.3d 1335, 1360 (Fed.Cir.2002) (en banc) (Mayer, C.J., dissenting) (Board proceedings are “entirely inquisitorial” in that their purpose “is to ensure that the veteran receives whatever benefits he is entitled to, not to litigate as though it were a tort case.”) Because board proceedings are non-adversarial in nature, it is the Supreme Court’s decisions in Irwin and Boiven, not Stone, which control.
II.
“Obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing.” Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1230 (11th Cir.2007). As other circuits have correctly recognized, it is an “unwarranted extension of Bowles to think that the Court was impliedly rendering equitable tolling inapplicable to limitations periods just because they are set forth in statutes.” Diaz, 515 F.3d at 153. Interpreting Bowles to apply to every statutory filing deadline “would overturn huge swaths of established case law.” Ross-Tousey, 549 F.3d at 1155. Thus, in the wake of Bowles, many courts have concluded that the doctrine of equitable tolling is alive and well and can appropriately be applied to many different filing deadlines. See, e.g., Rouse v. Dep’t of State, 567 F.3d 408, 417 (9th Cir.2009) (applying equitable tolling to the limitations period for filing claims under the Privacy Act); Santos, 559 F.3d at 194-97 (concluding that equitable tolling is available under the Federal Tort Claims Act); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.2009) (concluding that Bowles did not invalidate the application of equitable tolling to the time limit for claims under the Antiterrorism and Effective Death Penalty Act (“AEDPA”)); Ross-Tousey, 549 F.3d at 1155 (concluding that the deadline for filing a motion to dismiss under Chapter 7 of the Bankruptcy Code was not jurisdictional); Diaz, 515 F.3d at 153 (concluding that equitable tolling applies under the AED-PA); Percy v. Shinseki, 23 Vet.App. 37, 44 (2009) (concluding that the time limit for filing a substantive appeal to the board under 38 U.S.C. § 7105(d)(3) is not jurisdictional); Engel v. 34 E. Putnam Ave. *1226 Corp., 552 F.Supp.2d 291, 294 (D.Conn.2008) (concluding that the 30-day period for filing a motion to remand a case under 28 U.S.C. § 1447(c) was not jurisdictional); but see, e.g., United States v. Rodriguez, 67 M.J. 110 (C.A.A.F.2009) (concluding, in light of Bowles, that the statutory timing provision for criminal appeals from the United States Navy-Marine Corps Court of Criminal Appeals, 10 U.S.C. § 867(b), is “jurisdictional” and not susceptible to equitable tolling).
Indeed, in an aptly titled case, United States v. Henderson, 536 F.3d 776, 779 (7th Cir.2008), the Seventh Circuit correctly determined that, notwithstanding Bowles, not all statutory time for appeal provisions are jurisdictional. At issue there was the time for appeal provision contained in 18 U.S.C. § 3731, which provides that the government has the right to appeal “a decision or order of a district court suppressing or excluding evidence” so long as the appeal is “taken within thirty days after the decision, judgment or order has been rendered.” 536 F.3d at 778. Although the government failed to file its appeal within the statutorily prescribed period, the Seventh Circuit rejected the contention that Bowles required dismissal of the appeal. Id. at 778-79. The court explained that “Bowles considered whether a court may make an exception to a statutorily imposed time limit for filing an appeal; it did not involve the separate question of when such a time limit begins to run.” Id. at 779 n. 2.[3] A similar analysis can be applied here. Even assuming arguendo that Bowles precludes the Veterans Court from making “exceptions” to section 7266(a)’s limitations period, it does not specify when the limitations period begins to run. Accordingly, there is nothing in Bowles to prevent a determination that the statutory period does not begin to run or, as discussed previously, is suspended during periods when a veteran is physically or mentally incapacitated.
III.
“It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute.” Young v. United States, 535 U.S. 43, 49-50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (citations and internal quotation marks omitted). Thus, in analyzing section 7266(a), the key inquiry is whether “there [is] a good reason to believe that Congress did not want the equitable tolling doctrine to apply.” United States v. Brockamp, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (emphasis in original); Sand & Gravel, 552 U.S. at 138, 128 S.Ct. 750 (noting that the Irwin presumption of equitable tolling can be rebutted “by demonstrating Congress’ intent to the contrary”); Arbaugh v.Y & H Corp., 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (“[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.”). The majority adduces nothing to demonstrate that Congress intended to preclude the application of equitable tolling in proceedings before the Veterans Court. To the contrary, section 7266(a)’s language, legislative history and placement within a uniquely benevolent adjudicatory scheme compel the conclusion that it was designed to function as a statute of limitations rather than an inflexible jurisdictional bar.
*1227 A. Limits on a Court’s Reviewing Authority
The Supreme Court has historically distinguished between statutes that address the power of a court to hear a case and those that impose timely filing obligations on individual litigants. See Kontrick v. Ryan, 540 U.S. 443, 453-55, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (discussing the difference between a court’s authority to hear a case, and rules that simply tell a court how to process claims in cases that Congress has permitted the courts to hear). While the former are mandatory and jurisdictional, the latter are not, and can be equitably tolled in appropriate circumstances. See id. The statute at issue in Bowles contains an express limit on the power of Article III courts to hear appeals. See 28 U.S.C. § 2107(a) (“[N]o appeal shall bring any judgment ... before a court of appeals for review unless notice of appeal is filed ... within thirty days after the entry of ... judgment.”). Given this explicit limit on judicial authority, it is not surprising that the Supreme Court determined that the failure to file within the period specified in the statute “deprived the Court of Appeals of jurisdiction.” Bowles, 551 U.S. at 213, 127 S.Ct. 2360.
Here, in contrast, section 7266(a) is not framed as an express limit on the authority of the reviewing tribunal, but instead speaks only to the actions a veteran must take to bring his claim:
In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans’ Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.
38 U.S.C. § 7266(a).
Because the statute at issue here, unlike the statute at issue in Bowles, does not contain an explicit limitation on the authority of the reviewing court, it is properly classified as a claims-processing rule, which, while serving the salutary purpose of protecting against stale claims, is not imbued with the jurisdictional heft of a statutory limit on judicial authority. See Kontrick, 540 U.S. at 455, 124 S.Ct. 906 (“Clarity would be facilitated if courts and litigants used the label ‘jurisdictional’ not for claim-processing rules, but only for prescriptions delineating the classes of cases (subjecUmatter jurisdiction) and the persons (personal jurisdiction) falling within a court’s adjudicatory authority.”).
Tellingly, Congress considered, but rejected, language that might have made section 7266(a) jurisdictional in nature. When it was wrestling with different approaches to judicial review of veterans’ claims, a Senate bill proposed direct review of board decisions by the regional circuit courts of appeals. It stated that “no action [for judicial review] may be brought” unless the request for review “is filed not more than 180 days after” notice of the board’s decision. S. 11, 100th Cong., 2d Sess. § 4025(g)(1). That language “was clearly jurisdictional in nature,” Bailey, 160 F.3d at 1372 (Bryson, J., dissenting), similar in many respects to the language of the statute deemed jurisdictional in Bowles. See 28 U.S.C. § 2107(a) (“[N]o appeal shall bring any judgment ... before a court of appeals for review unless notice of appeal is filed ... within thirty days after the entry of ... judgment.”). Because Congress ultimately rejected language that would have framed the deadline for filing at the Veterans Court as a limit on the power of the court to hear a case, we can presume that it did not intend for section 7266(a) to serve as a jurisdictional bar. See Arctic Slope Native Ass’n v. Sebelius, 583 F.3d 785, 799 (Fed. *1228 Cir.2009) (“Of course, a central factor in determining whether a particular statute is subject to equitable tolling is the language used to set forth the time limitation.”).
The language Congress ultimately selected for framing the deadline for filing appeals to the Veterans Court, however, is remarkably similar to the language it choose to set forth the time limit for bringing a challenge to a final EEOC action in the statute addressed in Irwin. There the statute provided that “an employment discrimination complaint against the Federal Government under Title VII must be filed ‘within thirty days of receipt of notice of final action taken’ by the EEOC.” Irwin, 498 U.S. at 92, 111 S.Ct. 453 (quoting 42 U.S.C. § 2000e-16(c)). Because section 7266(a), like the Irwin statute, imposes timely filing obligations on an individual litigant seeking court review of an adverse agency action, instead of imposing limits on the authority of a reviewing tribunal, it is properly viewed as a statute of limitations rather than a jurisdictional bar.
Little, if any, significance can be attached to the fact that during the period when Congress was wrestling with different approaches to providing judicial review of veterans’ claims, a bill in the House provided that the time period for filing at the Veterans Court could be extended “for good cause shown.” See H.R. 5288, 100th Cong., 2d Sess. § 4015(d)(1). This bill also proposed eliminating the board and replacing it with a 65-judge Court of Veterans Appeals that would have had responsibility for direct review of decisions from the Veterans Affairs’ regional offices. Id. at § 4003. Because the good cause exception was part of an adjudicatory framework that was ultimately rejected by Congress, it is not surprising that there is no explicit good cause exception in the final version of section 7266(a). Indeed, by the time Congress finally passed the Veterans Judicial Review Act, Pub.L. No. 100-687, 102 Stat. 4105, in 1988, the Supreme Court had already determined that equitable tolling applied to the time limits for bringing challenges to adverse agency decisions. See Bowen, 476 U.S. at 477-79, 106 S.Ct. 2022. Under such circumstances, it would have been superfluous to include a provision allowing tolling of the limitations period under section 7266(a). See Midlantic Nat’l Bank v. N.J. Dep’t of Envtl. Prot., 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (“The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.”).
The majority makes much too much of the fact that the filing a veteran uses to commence litigation at the Veterans Court is styled a “notice of appeal.” Presumably, Congress only used the term “notice of appeal” in section 7266(a) to distinguish the filing a veteran makes at the Veterans Court from the one he makes at the board, which is called a “notice of disagreement.” See 38 U.S.C. § 7105. There is not a scintilla of evidence in the legislative history to indicate that Congress used the term “notice of appeal” in section 7266(a) in order to equate the filing a veteran makes at the Veterans Court with the filing a litigant makes to appeal a final district court judgment. To the contrary, Congress uses the term “appeal” throughout Title 38 whenever it wishes to refer to a veteran’s challenge to a prior determination, regardless of whether that determination is from the regional office or the board. See, e.g., 38 U.S.C. § 7101 referring to the board as “the Board of Veterans’ Appeals ” (emphasis added); id. at § 7104 (discussing “appeals” to the board); id. at § 7105(b)(2) (“Notices of disagreement, and appeals [to the board], must be in writing.”); id. at § 7105(d)(5) (“The Board of Veterans’ Appeals may dismiss *1229 any appeal which fails to allege specific error.” (emphasis added)). To conclude that a notice of appeal to the Veterans Court is equivalent to a notice of appeal to a circuit court of appeals is to exalt semantics over substance. See Henderson, 22 Vet.App. at 223 (Schoelen, J., dissenting) (“I do not believe the Supreme Court’s use of the term ‘notice of appeal’ in Bowles is interchangeable with the use of the term in 38 U.S.C. § 7266(a), and I remain unconvinced that Bowles compels the result reached today.”); see also King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (“[T]he meaning of statutory language, plain or not, depends on context.”).
It should be noted, moreover, that Bowles addresses the jurisdictional magnitude of Rule 4 of the Federal Rules of Appellate Procedure. See 551 U.S. at 208-10, 127 S.Ct. 2360. The Federal Rules of Appellate Procedure, however, “govern appeals from Article III district courts” and are “inapplicable to the [Veterans Court], an Article I Court.” Bailey, 160 F.3d at 1367; see also Oja v. Dep’t of Army, 405 F.3d 1349, 1359 (Fed.Cir.2005) (concluding that the time limit to appeal to this court from the Merit Systems Protection Board is jurisdictional because such appeals are governed by the Federal Rules of Appellate Procedure). The Federal Rules of Appellate Procedure are “legislative in nature,” Bailey, 160 F.3d at 1367, and it is therefore not surprising that the Supreme Court concluded in Bowles that Rule 4 was imbued with jurisdictional significance.
B. The Brockamp Factors
The Supreme Court has identified several factors as important in determining whether Congress intended equitable tolling to apply to a particular statutory time limit: (1) whether the language setting forth the time limit is unusually detailed or technical in nature, (2) whether a statute contains multiple iterations of the limitations period, (3) whether a timing provision contains explicit exceptions to the filing deadline, and (4) the underlying subject matter of the statutory scheme in which the timing provision is found. See Brockamp, 519 U.S. at 350-53, 117 S.Ct. 849; Kirkendall v. Dep’t of Army, 479 F.3d 830, 836-37 (Fed.Cir.2007) (en banc). Here, each of these factors strongly supports the conclusion that Congress intended for equitable tolling to apply to the limitations period contained in section 7266(a).
Section 7266(a)’s filing deadline is set forth in simple terms, eschewing the use of technical jargon to set forth the limitations period. See Brockamp, 519 U.S. at 350, 117 S.Ct. 849 (“Ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied ‘equitable tolling’ exception.”); Arctic Slope Native Ass’n, at 799-800 (concluding that the time for presenting a claim under the Contracts Disputes Act was subject to equitable tolling since the applicable timing provision was expressed in simple, non-technical language). Nor does section 7266(a) contain multiple iterations of the filing deadline. Cf. Brockamp, 519 U.S. at 350-51, 117 S.Ct. 849 (concluding that the time limit for seeking a tax refund was not subject to equitable exceptions where the statute “reiterate[d] its limitations several times in several different ways”).
Moreover, section 7266(a) does not contain explicit exceptions to the time to file requirements. Applying the maxim ex-pressio unius est exclusio alterius, the Supreme Court has made clear that the “explicit listing of exceptions” to the running of the limitations period must be considered by courts to be indicative of Congress’ intent to preclude them from “reading] other unmentioned, open-ended, *1230 equitable exceptions into the statute.” Brockamp, 519 U.S. at 352, 117 S.Ct. 849 (internal quotation marks omitted). In Bowles, the statute at issue already contained an explicit exception to the time to file requirements, allowing a district court to extend the filing period for fourteen days beyond the thirty-day period allotted to appeal a district court’s final judgment. See 28 U.S.C. § 2107(c). Here, in contrast, section 7266(a) “does not provide its own exceptions to the general rule” regarding when an action must be filed. Bailey, 160 F.3d at 1365; see Arctic Slope Native Ass’n, at 799-800 (concluding that equitable tolling applies to a Contract Disputes Act timing provision which did not contain any express exceptions to the deadline for a contractor to submit claims).
By far the most important factor compelling the conclusion that equitable tolling applies to section 7266(a) is the fact that it is found in a uniquely pro-claimant adjudicatory scheme. See Barrett v. Nicholson, 466 F.3d 1038, 1044 (Fed.Cir.2006) (“The government’s interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them.”); Bailey, 160 F.3d at 1370 (Michel, J., concurring) (The Veterans Court is “set in a sui generis adjudicative scheme for awarding benefit entitlements to a special class of citizens, those who risked harm to serve and defend their country.”). The 120-day filing period must be interpreted not in a vacuum, but with a keen awareness that Congress created the Veterans Court in order “to ensure that veterans ... receive all benefits to which they are entitled.” S.Rep. No. 100-418, 100th Cong., 2d Sess. 29 (1988).[4] Equitable tolling does not excuse tardy filing in cases of simple ineptitude or garden variety neglect, see Nelson v. Nicholson, 489 F.3d 1380, 1384 (Fed.Cir.2007), but it is a critically important safeguard in situations where a serious mental or physical infirmity renders it impossible for a veteran to comply with a rigidly enforced filing deadline.
The impetus for the creation of the Veterans Court was Congress’ abiding concern that individuals who had put their lives on the line through service in the military had no right to have their claims for disability benefits reviewed in a court of law. See, e.g., S.Rep. No. 100-418, 100th Cong., 2d Sess. 30-31 (“Under current law, a veteran ... aggrieved by a final [board] decision is left without any further recourse.... This legislation is designed to ensure that all veterans are served with compassion, fairness, and efficiency, and that each individual veteran receives ... every benefit and service to which he or she is entitled under law.”); id. at 50-51 (“[T]he committee continues to believe that providing an opportunity for those aggrieved by VA decisions to have such decisions reviewed by a court, in a manner similar to that enjoyed by claimants before almost all other Federal agencies, is necessary in order to provide such claimants with fundamental justice.... [Jjudicial review, by opening the decisions of the VA to court scrutiny, will have a salutary effect on such decisions and on the VA decisionmaking process in general by involving the judiciary as a check on agency actions.”). Given Congress’ clearly expressed desire to provide veterans with *1231 access to the judicial system, interpreting section 7266(a) in a way that will deprive those who are incapable of meeting rigidly enforced deadlines of the right to judicial review is “as unsupportable as it is coun-terintuitive.” Barnhart v. Peabody Coal Co., 537 U.S. 149, 158, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003) (concluding that time limits specified in the Coal Industry Retiree Health Benefit Act of 1992 should not be construed in a way that might deprive compensation to the intended beneficiaries of the statute).
When it established the Veterans Court, Congress made clear that proceedings before the court were not to be overly “formalized,” but instead were to be “[a]ccu-rate, informal, efficient, and fair.” H.R.Rep. No. 100-963, 100th Cong., 2d Sess. 26 (1988), 1988 U.S.C.C.A.N. 5782, 5808. By eradicating equitable tolling, the majority creates a harsh and formalistic adjudicatory scheme that is the antithesis of what Congress intended. See Forshey, 284 F.3d at 1360 (Mayer, C.J., dissenting) (“Viewed in its entirety, the veterans’ system is constructed as the antithesis of an adversarial, formalistic dispute resolving apparatus.”).
The majority’s approach to equitable tolling is particularly indefensible given that most veterans act pro se when they file their petitions for review in the Veterans Court. See U.S. Court of Appeals for Veterans Claims Annual Report (2008), available at http//www.useourts.cavc.gov/ documents/Annual — Report-20081. pdf. The Supreme Court has cautioned that a strict reading of a filing provision is especially “inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.” Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 397, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (internal quotation marks omitted). Because so many veterans must file their petitions without the assistance of counsel, it is highly unlikely that Congress intended for section 7266(a) to serve as a harsh and inflexible jurisdictional bar.
To the contrary, Congress has given every indication that it sanctions equitable tolling in proceedings before the Veterans Court. In 1998, Bailey held that section 7266(a) was subject to equitable tolling. 160 F.3d at 1364-68. In the eleven years since Bailey, Congress has had ample opportunity to overturn the application of tolling in Veterans Court proceedings, but has declined to do so. Instead, in 2000, Congress enacted comprehensive revisions to the veterans’ benefits system, see Veterans Claims Assistance Act of 2000, Pub.L. No. 106-475, 114 Stat. 2096, but did nothing to eliminate or circumscribe equitable tolling at the Veterans Court. In 2001, Congress specifically reviewed and then amended section 7266, repealing a provision that required a veteran to serve a notice of appeal on the Veterans Administration. See Veterans Education and Benefits Expansion Act of 2001, Pub.L. No. 107-103, § 507, 115 Stat. 976, 999. Again, however, Congress chose not to disturb established equitable tolling jurisprudence. Under such circumstances, it is reasonable to assume that Congress agrees with equitable tolling in Veterans Court proceedings. See Cannon v. Univ. of Chicago, 441 U.S. 677, 699, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (“[I]t is not only appropriate but also realistic to presume that Congress [is] thoroughly familiar” with important court decisions when it enacts legislation.); Jacobs v. Nat’l Drug Intelligence Ctr., 548 F.3d 375, 378 (5th Cir.2008) (“Congress is presumed to be aware of court decisions construing statutes and may, of course, amend a statute as a result.”).
Statistics from the Veterans Court make clear that the elimination of equitable tolling will deal a heavy blow to many deserv *1232 ing veterans. In 2008, the Veterans Court heard 3,542 appeals on the merits and reversed, vacated or remanded 2,184 of the board’s decisions. See U.S. Court of Appeals for Veterans Claims Annual Report (2008), available at http://www.uscourts. cavc.gov/documents/Annual — Report-20081.pdf. Thus, veterans often mount successful challenges to adverse board decisions when they come before the Veterans Court. With the eradication of equitable tolling, many deserving veterans will be deprived of the right to have an erroneous board decision corrected on appeal. See Br. of Amicus Curiae United Spinal Assoc, at 14 (noting that since the Veterans Court abolished equitable tolling “it has dismissed over 130 appeals based on the inability of claimants to meet the filing requirements of § 7266, an average of over two dismissals a week”).
While the abolition of equitable tolling will prove calamitous for many severely disabled veterans, its continuance would result in no prejudice to the government. All factual information must be presented during earlier proceedings, so a delay in bringing an action in Veterans Court will not hinder the government’s ability to obtain evidence or present its case. Bailey, 160 F.3d at 1365 (Since section 7266(a) “addresses timeliness for an appeal from a closed record,” the application of equitable tolling “does not threaten administrative complexity or unpredictable fiscal peril.”). And because it often takes many years — in some cases several decades — to obtain service-connected benefits, the government is hardly in a position to complain that equitable tolling will result in inordinate delays. See James Dao, “Veterans Affairs Faces Surge of Disability Claims,” N.Y. Times, July 12, 2009 (noting that the backlog of claims seeking service-connected benefits is now over 400,000); Comer v. Peake, 552 F.3d 1362, 1365-71 (Fed.Cir.2009) (summarizing the hurdles faced by a mentally disabled veteran in his twenty-year struggle to obtain disability compensation).
This court often pays lip-service to “the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries’ favor.” See King, 502 U.S. at 220 n. 9, 112 S.Ct. 570; Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). In reality, however, it not infrequently fails in its “fundamental obligation to apply the law, when the issue is an open one, in favor of the veteran.” Schism v. United States, 316 F.3d 1259, 1311 (Fed.Cir.2002) (Plager, J., dissenting). Even if this were a close case, which it is not, we would be obliged to resolve any interpretive doubt regarding whether equitable tolling applies to section 7266 in the veteran’s favor. Cf. Kirkendall, 479 F.3d at 843.
IV.
Four justices of the Supreme Court thought the result in Bowles was fundamentally unfair. See 551 U.S. at 215, 127 S.Ct. 2360 (Souter, J., joined by Stevens, Ginsburg and Breyer, JJ., dissenting) (“It is intolerable for the judicial system to treat people this way.”). The facts here are far more compelling. Bowles was a convicted murderer, and had a jury trial, a direct appeal and a federal district court review of his habeas corpus application. His untimely filing resulted only in the loss of the right to have the denial of his habe-as petition reviewed by an appellate court.
Henderson was discharged from active military duty due to service-connected paranoid schizophrenia. His psychiatrist reports that he is “incapable of rational thought or deliberate decision-making” and “incapable of understanding and meeting deadlines.” A1028. Acting pro se, Henderson filed an action challenging the *1233 board’s decision denying him monthly compensation for at-home care, but his complaint was dismissed because it was filed a mere fifteen days outside the 120-day filing period specified in section 7266(a). Because the majority has seen fit to renounce equitable tolling, Henderson will be deprived of all right to judicial review of his claim. So while Bowles, a convicted murderer, had several opportunities to present his case in a court of law, Henderson will have none.
The majority does not dispute that Henderson’s mental illness rendered him incapable of meeting section 7266(a)’s filing deadline. Nor can it dispute that Bowles does not mention, much less explicitly overrule, this court’s well-established precedent applying equitable tolling in proceedings before the Veterans Court. Yet the majority construes Bowles in a way that will deprive many deserving veterans of all right to judicial review. But “[o]ur Nation has a long tradition of according leniency to veterans in recognition of their service.... ” Porter v. McCollum, — U.S. -, 130 S.Ct. 447, 455, — L.Ed.2d-(2009). Eliminating equitable tolling deprives deserving veterans of the leniency they are due and makes a mockery of the pro-claimant adjudicatory system Congress intended to create. Those “who have been obliged to drop their own affairs to take up the burdens of the nation” through service in the military, Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 87 L.Ed. 1587 (1943), deserve far better.

. The Court concluded that the "definitive earlier interpretation of the statute” applicable to suits filed in the Court of Federal Claims "offerfed] a ... sufficient rebuttal” to the Irwin presumption. Sand & Gravel, 552 U.S. at 137-38, 128 S.Ct. 750.

. Fed. R.App. P. 4 "carries [28 U.S.C. § 2107(c)] into practice” and "describes the district court's authority to reopen and extend the time for filing a notice of appeal,” Bowles, 551 U.S. at 208, 127 S.Ct. 2360.

. The court ultimately concluded that the statutory period for filing an appeal did not begin to run during the pendency of a timely filed motion for reconsideration, notwithstanding the fact that the statute provided that appeals had to be taken within thirty days of a district court decision. Henderson, 536 F.3d at 779 n. 2.

. The Veteran’s Court seems to have lost sight of its mandate when it took it upon itself to "overrule” Bailey and Jaquay. In eradicating equitable tolling based on Bowles, the Veterans Court conveniently overlooked the fact that Bowles did not cite to, much less overrule, any case involving section 7266(a). Indeed, even the government acknowledges that the Veterans Court acted inappropriately in failing to follow binding precedent of this court on the question of whether equitable tolling applies in Veterans Court proceedings.