# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-127

WILLIAM O. REED, JR., APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before KRAMER, *Chief Judge*, and FARLEY and IVERS, *Judges.*

## O R D E R

The appellant seeks review of a decision of the Board of Veterans' Appeals (Board or BVA) dated September 18, 2001. To be timely under Rule 4 of this Court's Rules of Practice and Procedure (Rules) and precedents construing 38 U.S.C. § 7266(a), a Notice of Appeal (NOA) must have been received by the Court within 120 days after notice of the BVA decision is mailed to an appellant. In this case, to have been received within that 120-day period, the appellant's NOA must have been received by the Court on or before January 16, 2002.

On January 29, 2002, the appellant's NOA was received by the Court from the VA Office of General Counsel (OGC), 133 days after notice of the BVA decision was mailed. The envelope in which the appellant's NOA was mailed is addressed to "General Counsel (027), Department of Veterans Affairs, 810 Vermont Avenue, NW, Washington, DC 20420." It bears a postmark date of December 19, 2001. The NOA has a date stamp that indicates that the OGC received it on January 25, 2002, 129 days after notice of the BVA decision was mailed.

On February 4, 2002, the Court ordered the appellant to show cause, within 20 days, why this appeal should not be dismissed for lack of jurisdiction. In his February 11, 2002, response, the appellant asserted that there were several errors in the BVA decision but he did not address the Court's jurisdiction to review the instant appeal. On March 22, 2002, the Court issued an order dismissing the instant appeal for lack of jurisdiction. *Reed v. Principi*, No. 02-127, 2002 WL 549953 (Vet. App. March 22, 2002). The appellant filed a motion for reconsideration in which he asserted that his NOA was mailed on December 19, 2001, but was delayed as a result of the anthrax scare (contamination of U.S. Postal Service (U.S.P.S.) equipment in autumn 2001 from processing of letters containing anthrax spores). The appellant argued that the anthrax scare created a situation beyond his control. On April 17, 2002, the Court, relying on *Baisden v. West*, 11 Vet.App. 215, 216 (1998), noted that the appellant had mailed his NOA to the OGC and not to this Court, and thus, denied the appellant's motion for reconsideration. *See Baisden*, *supra* (mailing NOA to OGC will not protect appellate rights). The appellant appealed to the United States Court of Appeals for the Federal Circuit (Federal Circuit).

The Federal Circuit, on September 16, 2002, issued its opinion in *Jaquay v. Principi*, 304 F.3d 1276 (Fed. Cir. 2002) (en banc) (*Jaquay II*), which reversed *Jaquay v. West*, 11 Vet.App. 67 (1998) (*Jaquay I*), and on December 17, 2002, it issued its opinion in *Santana-Venegas v. Principi*, 314 F.3d 1293 (Fed. Cir. 2002). In light of *Jaquay II, supra,* and on the unopposed motion of the Secretary, the Federal Circuit in January 2003 vacated this Court's March 2002 order and remanded the matter for this Court to address the effect, if any, of *Jaquay II*. In a January 27, 2003, order, the Court invited the appellant to file supplemental argument regarding the Court's jurisdiction to review the instant appeal. On April 8, 2003, the appellant, now represented by counsel, filed a response to the Court's order.

In his response, the appellant indicates that, on October 18, 2001, he requested that the Veterans of Foreign Wars (VFW), which had represented him before VA, represent him before the Court, but he was not advised until approximately 30 to 35 days later that VFW had declined to represent him. Further, the appellant argues that, because he actively pursued his judicial remedies by mailing his NOA first to the VFW and then to the OGC, equitable tolling should be applied under *Jaquay II* and *Santana-Venegas*, both *supra*. The appellant asserts that the misfiling of his NOA with the OGC rather than with the Court fulfills the due diligence requirement under the first prong of the test for equitable tolling set forth in *Irwin v. Department of Veterans Affairs,* 498 U.S. 89 (1990). The appellant renews his argument that the filing of his appeal was delayed because of the threat of anthrax contamination, which dramatically altered the U.S.P.S.'s handling of mail in the Washington, D.C., area and subsequently caused delays, around the time the appellant mailed his NOA, in the processing of mail as a result of the U.S.P.S.'s irradiation procedures. The appellant asserts that VA has a policy of forwarding to the Court misdirected mail and he argues that, under normal circumstances, the Court would have received his NOA within the 120-day judicial-appeal period but for the delay allegedly caused by the anthrax problem. Thus, the appellant requests that the Court consider the postmark date of December 19, 2001, to be the filing date of his NOA and deem his appeal timely filed.

The ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.*, 298 U.S. 178 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252 (1992). As the Court stated above, to be considered timely under Rule 4 of this Court's Rules and precedents construing 38 U.S.C. § 7266(a), an NOA must be received by the Court within 120 days after notice of the BVA decision is mailed to an appellant. This Court's jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818 (1988).

Initially, the Court notes that, in accordance with 38 U.S.C. § 5104, the appellant was fully advised of his appellate rights, including the proper address to which he should mail the NOA. *See Cummings v. West*, 136 F.3d 1468, 1473-74 (Fed. Cir. 1998). The VA Form 4597 (appeals notice) attached to the September 2001 Board decision provided, in part:

2

A[n NOA] must be filed with the Court within 120 days from the date of mailing of the notice of the BVA's decision. . . . The Court's address is: The United States Court of Appeals for Veterans Claims, 625 Indiana Avenue, NW, Suite 900, Washington, DC 20004. . . .You must also mail a copy of the [NOA] to the VA General Counsel (027), 810 Vermont Avenue, NW, Washington, DC 20420. However, this does not take the place of the [NOA] you must file with the Court. *Filing a copy of your [NOA] with the General Counsel, the Board, or any other VA office WILL NOT protect your right of appeal to the Court.*

Emphasis in original.

## A. Postmark Rule

The appellant argues that his NOA was delayed because of the threat of anthrax contamination and that the Court should consider the December 19, 2001, postmark date to be the filing date and deem his appeal timely filed.

Section 7266 of title 38, U.S. Code, governs the submission of an NOA as follows:

(a) In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to [38 U.S.C. §] 7104(e) of this title.

(b) An appellant shall file a notice of appeal under this section by delivering or mailing the notice to the Court.

(c) *A notice of appeal shall be deemed to be received by the Court as follows*:

(1) On the date of receipt by the Court, if the notice is delivered.
(2) *On the date of the United States Postal Service* postmark *stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed*.

(d) For a notice of appeal mailed to the Court to be deemed to be received under subsection (c)(2) on a particular date, the United States Postal Service postmark on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court's determination as to legibility shall be final and not subject to review by any other Court.

38 U.S.C. § 7266 (emphasis added). In this case, the appellant is not eligible for application of the postmark rule in section 7266(c)(2) because he improperly addressed the envelope containing his NOA, and as a result, the OGC address that he used did not "enabl[e] delivery to the intended

destination" of the Court. *Santoro v. Principi*, 274 F.3d 1366, 1370 (Fed. Cir. 2001) (holding that NOA addressed to Court with incorrect Zip Code number that caused it to be delivered to OGC rather than Court was "properly addressed" because error was inconsequential to delivery of NOA to Court and thus NOA was timely filed under postmark rule). Therefore, the plain language of the statute prohibits the Court from accepting the December 19, 2001, postmark as the date of filing in this case.

Moreover, to the extent that the appellant argues that, in light of the anthrax scare and subsequent disruption to U.S.P.S.'s mail-processing procedures, the Court should find his NOA timely, this argument is unavailing. Although VA may have established procedures for rerouting mail intended for the Court but misdirected to VA, *see* Appellant's April 2003 Response at 6, the Court will not speculate whether, at any time between December 19, 2001, the date of the U.S.P.S. postmark, and January 29, 2002, the date the Court ultimately received the NOA, on how any anthrax-related mail-processing delay within the U.S.P.S. may have affected when the appellant's NOA may have been delivered to the Court. *Compare* FED. R. APP. P. 26(a)(3) (excluding from last day of filing period day "on which the weather or other conditions make the clerk's office inaccessible"), *with* U.S. VET. APP. R. 26(a)(1) (as amended effective Dec. 26, 2001) (addressing computing time periods set by Court's Rules, but containing no such exclusion)*, and with* U.S. VET. APP. R. 26(a)(1) (as amended effective Feb. 14, 2003) (last day of filing period included in computation of time unless, inter alia, it is day when Chief Judge or Court declares that weather or other condition makes Clerk's Office inaccessible). *See, e.g.*, *Hardison v. NASA,* No. 02-3299, 2002 U.S. App. LEXIS 17,830, at *1-2 (Fed. Cir. Aug. 2, 2002) (quoting Federal Circuit's electronic announcement in which that court declared itself inaccessible due to mail-delivery delays). Further, the Court notes that, between the September 18, 2001, mailing date of the BVA's decision and the December 19, 2001, postmark date, any NOA as to this matter was in the appellant's control. In contrast, here the appellant's NOA was in VA's control for only four days between January 25, 2002, and January 29, 2002.

B. Equitable Tolling

The Court's April 2002 order, in which it relied on *Baisden, supra*, to deny the appellant's motion for reconsideration, was issued before the Federal Circuit issued its opinions in *Jaquay II* and *Santana-Venegas*, both *supra*. In *Baisden*, the Court relied extensively on *Jaquay I* to support its holding that the NOA in that case was untimely where it was mailed in an envelope addressed to the OGC and it subsequently was received by the Court (from the OGC) more than 120 days after the mailing of the notice of the Board decision. *See Baisden*, 11 Vet.App. at 216-17. Because, as noted, *Jaquay I* was subsequently reversed, the Court, in accordance with the Federal Circuit's remand order, will address whether equitable tolling is now appropriate in view of *Jaquay II* and *Santana-Venegas*. In response to the Court's January 2003 supplemental briefing order, the appellant argues that the Court should extend the holdings in *Jaquay II* and *Santana-Venegas*, both *supra,* to deem his NOA timely filed.

4

*Santana-Venegas* and *Jaquay II* are both progeny of the seminal Federal Circuit opinion on equitable tolling, *Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998). In *Bailey,* the Federal Circuit determined:

> *Irwin* and other cases explain that equitable tolling is available in suits between private litigants where, "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."

*Bailey,* 160 F.3d at 1364 (quoting *Irwin, supra*). The *Bailey* court further held that, because of the absence of a "contrary congressional expression," this Court may employ equitable tolling to find, under 38 U.S.C. § 7266, that an appellant's NOA was timely filed. *Id*. at 1365. However, in *Irwin*, the Supreme Court also cautioned that courts "have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights" or in situations which are "at best a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96.

In *Jaquay II*, the Federal Circuit held that a request for Board reconsideration, misfiled with the VA regional office (RO) from which the claimant's claim originated instead of with the Board, equitably tolled the judicial-appeal period for filing an NOA to this Court under the first prong of *Irwin* (that is, the due-diligence requirement). *Jaquay II*, 304 F.3d at 1289; *see Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991). In so holding, that court noted the difference between the misfiling of a request for reconsideration within the same agency and the filing of an NOA to this Court in that the latter action is the "first action taken by a veteran in a court of law." *Jaquay II*, 304 F.3d at 1286; *see id*. at 1288 (misfiling at issue in *Jaquay II* "took place several steps into a claim for benefits within a government agency"). The Federal Circuit observed: "In the context of the non-adversarial, paternalistic, uniquely pro-claimant veterans' compensation system, and consistent with our decision in *Bailey*, the availability of equitable tolling pursuant to *Irwin* should be interpreted liberally with respect to filings during the non-adversarial stage of the veterans' benefits process." *Id.* Further, with respect to the due-diligence requirement espoused in *Irwin*, *supra*, the Federal Circuit stated:

> While equitable tolling is available to toll the judicial appeal period of 38 U.S.C. § 7266, a veteran who files an untimely notice of appeal must nevertheless show that he "exercised due diligence in preserving his legal rights." [T]he diligence requirement is more relaxed for cases where the claimant filed a pleading in the wrong place as opposed to filing it after a statutory deadline. Misfiling cases within the veterans' system are unlike the typical late-filing cases where the limitations period expires before the would-be claimants perform any action to preserve their legal rights. The filing of the misdirected paper itself satisfies the diligence requirement as a matter of law.

*Jaquay II*, 304 F.3d at 1287-88 (citations omitted).

5

In *Santana-Venegas, supra*, the Federal Circuit extended the application of equitable tolling to a case where a veteran demonstrated due diligence by seeking redress from an adverse BVA decision through filing his NOA within the 120-day judicial-appeal period with the same RO from which his claim had originated. *Santana-Venegas*, 314 F.3d at 1298. In that case, the appellant, at the time that he signed an NOA (more than two months after the date stamp on that BVA decision), had yet to receive a copy of the BVA decision from which he sought to appeal. *Id.* at 1295. The Federal Circuit, relying on *Jaquay II* and *Bailey,* both *supra,* held that "a veteran who misfiles his or her notice of appeal at the same VARO from which the claim originated within the 120-day judicial appeal period of 38 U.S.C. § 7266, thereby actively pursues his or her judicial remedies, despite the defective filing, so as to toll the statute of limitations [under the first *Irwin* prong]." *Id.* at 1298. In so holding, the court took particular note of the fact that, although the RO had received that appellant's NOA within the 120-day judicial-appeal period, it did not, until more than two months later, inform the appellant that he should have filed his NOA with the Court. *Id.* at 1296-97. In this regard, that court questioned whether VA had failed to fulfill its duty to assist the appellant by failing to respond to his NOA within a period of time set forth in *VA's Adjudication Procedure Manual M21-1*. *Id.* at 1298.

The Court finds the recent decisions in *Jaquay II* and *Santana-Venegas* to be readily distinguishable from the instant case. In both *Jaquay II* and *Santana-Venegas,* the appellants misfiled their pleadings with the RO at which their claim originated and the office with which each appellant was most familiar. However, in this case, the appellant did not misfile his NOA with the RO, but rather he mailed it to the OGC, an entity with which he had no familiarity. Moreover, unlike the situation in *Jaquay II,* where an appellant filed his motion for BVA reconsideration within the same agency (VA) as the Board, when an appellant files an NOA from a BVA decision seeking review in the Court, he moves from the nonadversarial VA administrative system and enters an adversarial process. "An appeal to this Court begins an adversarial process, one not present at the administrative level." *MacWhorter v. Derwinski*, 2 Vet.App. 133, 136 (1992); *see Jaquay II*, 304 F.3d at 1288. This Court is not part of the VA system, as the Federal Circuit observed in *Abbs v. Principi*, 237 F.3d 1342, 1347-48 (Fed. Cir. 2001). Furthermore, in *Santana-Venegas*, the RO retained that appellant's NOA for more than two months before advising him that he should have filed it with the Court. *Santana-Venegas*, 314 F.3d at 1295. Here, the OGC forwarded to the Court the appellant's NOA without delay. Finally, the appellant cannot rely on *Santana-Venegas* because, in contrast to the appellant in that case, who had not received notice of his appellate rights, the appellant mailed his NOA to the OGC despite having the benefit of the Notice of Appellate Rights attached to the copy of the September 2001 BVA decision that was mailed to him that explicitly provided: "Filing a copy of your [NOA] with the [OGC] . . . WILL NOT protect your right of appeal to the Court." (Emphasis in italics omitted.)

Because there is otherwise nothing in this appeal to suggest that tolling of the 120-day appeal period would be appropriate, *see Irwin* and *Bailey,* both *supra,* the Court is without jurisdiction to review this appeal.

Upon consideration of the foregoing, it is

ORDERED that this appeal is DISMISSED for lack of jurisdiction.

DATED:        December 12, 2003                    PER CURIAM.