HAGEL, Judge,
with whom LANCE, Judge, joins, concurring in the result:
We concur in the result reached by the majority because Mr. Rickett’s Notice of Appeal was received by a location approved by the Federal Circuit within the 120-day appeal period and because, after he was notified of the misfiling, his Notice of Appeal was received by Court within a period of time shorter than those already deemed acceptable by the Federal Circuit. We write separately, however, to express several points of diversion from the reasoning in the majority opinion.
As explained below, the road between us forks at four locations. First, Reed v. Principi, 17 Vet.App. 380 (2003), has no bearing on this case. Second, the majority’s inquiry into due diligence beyond the timely misfiling of the Notice of Appeal is unnecessary in determining entitlement to equitable tolling in the case of a timely but misfiled Notice of Appeal. Third, the application of existing caselaw resolves this appeal without the need for further discussion. Fourth, the majority appears to expand, without sufficient guidance, the judicially approved locations for misfiling a Notice of Appeal beyond those already sanctioned by this Court and the Federal Circuit.
A. Unnecessary Use of Reed
First and foremost, because Reed concerned an untimely misfiling of a Notice of Appeal with the VA Office of the General Counsel, it is crystal clear that Reed has no bearing on the outcome of Mr. Rickett’s request for equitable tolling of his timely misfiled Notice of Appeal. In fact, the majority appears to recognize this when it states that “a timely misfiling is a necessary criterion in application of the test recognized by the Court in Hunt [v. Nicholson, 20 Vet.App. 519 (2006) ].” Ante at 218 (emphasis added). Nevertheless, the majority appears to ignore its own unequivocal statement to find that Reed must be overruled.
Likewise, Reed is easily distinguishable from the Federal Circuit cases on which the majority relies, because each of those cases also involved timely misfilings. Thus the majority’s use of Reed as the launching pad for its decision is improvident at. best.
B. Use of Post-Misfiling Actions to Prove Diligence

1. Misapplication of Federal Circuit Precedent

Second, in our view, the majority’s conclusion that an appellant must demonstrate postmisfiling due diligence (and during two distinct periods of time, as discussed further below) directly contradicts the position the Federal Circuit has consistently expressed in its caselaw. From the Federal Circuit cases, we think it clear that, as the Court concluded in Hunt, three things must be present before equitable tolling is warranted in cases of timely misfilings of Notices of Appeal: (1) Intent to appeal, (2) sufficient notice to VA of that intent, and (3) due diligence in pursuing an appeal to this Court.[8] We *227 also think it clear, however, given the Federal Circuit’s repeated reliance on Jaquay v. Principi, 304 F.3d 1276 (Fed.Cir.2002), and the fact that it reversed, rather than vacated, this Court’s dismissals in that case and the cases that followed, that the diligence factor is satisfied as a matter of law where the purported Notice of Appeal is misfiled at the Board or the regional office where the claim originated within the 120-day appeal period without regard for the postmisfiling actions of the appellant. See Brandenburg, 371 F.3d at 1364; Bailey (Edward) v. Principi, 351 F.3d 1381, 1384 (Fed.Cir.2003); Santana-Venegas v. Principi, 314 F.3d 1293, 1297 (Fed.Cir.2002); see also Jaquay, 304 F.3d at 1288.
The majority’s repeated emphasis on the Federal Circuit’s silence regarding post-misfiling actions in Santana-Venegas, Bailey (Edward), and Brandenburg ignores the fact that no discussion of postmisfiling actions was necessary in those cases because, as the Federal Circuit repeatedly stated in those cases, the timely misfiling of a Notice of Appeal at the Board or the regional office where the claim originated satisfied the diligence requirement as a matter of law. See Bailey (Edward), 351 F.3d at 1385; Santana-Venegas, 314 F.3d at 1297-98; Jaquay, 304 F.3d at 1288-89; see also Brandenburg, 371 F.3d at 1364. The majority rests its determination that postmisfiling actions are relevant on the fact that the Federal Circuit “specifically noted the time between the misfiling and the proper filing at the Court” in the various cases that followed Jaquay. Ante at 222. Although technically correct, the majority ignores that the Federal Circuit “specifically noted” this information in its recitation of the facts of each case, not its analysis. See Brandenburg, 371 F.3d at 1363; Bailey (Edward), 351 F.3d at 1383; Santana-Venegas, 314 F.3d at 1295-96. To add, as the majority does, an additional requirement of diligence beyond the timely misfiling itself not only ignores the law established by the Federal Circuit, but also establishes yet another element that must be proven by the appellant before a timely misfiled Notice of Appeal will meet the due diligence requirement.

2. Creation of Distinct Periods of Required Due Diligence

As noted briefly above, the rule the majority announces today creates two distinct periods during which an appellant must demonstrate due diligence. Although the majority purportedly accepts the Federal Circuit’s repeated ruling that an appellant demonstrates due diligence as a matter of law through the timely misfiling of a Notice of Appeal (at possibly indeterminate locations, as will be discussed below), the majority holds that the appellant does so only with respect to “the point in time when he or she files a[ ] [Notice of Appeal] within the 120-day appeal period at the [regional office] from which the claim originated, the Board, or possibly other locations within VA.” Ante at 222. The majority then creates a second period (and hints at a third) during which an appellant must also demonstrate some broad concept dubbed “relaxed due diligence” — between the time the appellant discovers the misfiling and the time the appellant actually files the Notice of Appeal with the Court— and has done so without explaining the criteria by which that diligence is to be judged. See ante at 222.[9] We think this tremendously unwise, as it will necessarily *228 lead to either a plethora of divergent single judge decisions or a series of panel decisions attempting to define the new standard by means of a thousand cuts. In either case, absent clear congruence with a prior precedent decision, the ultimate question of whether an appeal that has, as a matter of law, been diligently pursued will unlock the courthouse doors remains uncertain in every case.

3. Conceptual Agreement with Majority

The fact that we agree with the Federal Circuit that an appellant demonstrates due diligence through the timely misfiling of the purported Notice of Appeal at the regional office where the claim originated or the Board does not mean that we disagree with the concept advanced by the majority that an appellant cannot amble at his own speed toward the Court merely because he has diligently (mis)filed a Notice of Appeal. In fact, we agree with the majority that the time to file the Notice of Appeal “with the Court,” 38 U.S.C. § 7266(a) (emphasis added), after the appellant becomes aware of the misfiling is not, or ought not be, indefinite. In other words, a Notice of Appeal timely misfiled at a judicially approved location may not be “deemed received” by or “deemed filed” with the Court and thereby automatically permit the Court to consider the appeal on the merits. See 38 U.S.C. § 7266(c) (“A notice of appeal shall be deemed to be received by the Court as follows: (1) On the date of receipt by the Court, if the notice is delivered. (2) On the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.”). Further, we agree with the majority that the actual jailing of thé Notice of Appeal with the Court — that is, the perfection of the appeal — within a reasonably prompt amount of time after notification of misfiling is required. See 38 U.S.C. § 7266(a).
Having said that, a review of the Federal Circuit cases discussed above reveals that, after receiving notice of the misfiling, each of the appellants acted reasonably promptly to file his Notice of Appeal with the Court.[10] Mr. Rickett filed his Notice of Appeal with the Court no more than 13 days after becoming aware of his initial timely misfiling.[11] This, by our measure, falls well under the various time periods for perfecting an appeal already accepted by the Federal Circuit, and therefore we think entering into a drawn out exercise in expanding established precedent in this case, as the majority does, is unwise.
*229 A Exercise of Rulemaking Authority
As a final matter on this point, we note that the majority asserts that the “rule” it announces — presumably the totality of the circumstances test to establish “relaxed due diligence” — is based on the Court’s rulemaking authority. See ante at 222 (“Our holding today is made in the context of Federal Circuit precedents and in furtherance of our own rulemaking authority.” (emphasis added)). But because, as noted above, the “relaxed due diligence” standard is like putty — malleable to a judge’s individual view — “rule” is hardly the term we would use to describe it. Importantly, the “rule” established by the majority today will, in many cases, act as a gatekeeper to the Court. Consequently, we believe that, if a rule is to be established, it is more properly and prudently done through the amendment of Rule 4(a), which implements 38 U.S.C. § 7266(a). The Court has adopted an orderly process for doing so, which includes the Court’s self-imposed solicitation of public comment and the advice of the Rules Advisory Committee that was wisely established at the Court’s beginning for this very purpose. See 38 U.S.C. § 7264(a) (“The proceedings of the Court of Appeals for Veterans Claims shall be conducted in accordance with such rules of practice and procedure as the Court prescribes.”); 28 U.S.C. § 2071(b) (“Any rule prescribed by a court, other than the Supreme Court, ... shall be prescribed only after giving appropriate public notice and an opportunity for comment.”); In re Rules Advisory Comm., 2 Vet.App. 584, 584 (1992) (establishing Rules Advisory Committee to “advise the Court on proposed changes to its Rules of Practice and Procedure and other related matters”).
We are, apparently, not alone in this concern. See Baldridge v. Nicholson, 19 Vet.App. 227, 249 (2005) (Kasold, J., dissenting) (“I question the appropriateness and effectiveness of suggesting in this case detailed procedures that two judges of the Court might prefer, particularly when the Court has established rule-promulgating procedures that generally include the participation of our Rules Advisory Committee and other interested parties.”). More recently, three of the judges in the majority have also taken this view. See also Bove v. Shinseki, 25 Vet.App. 136, 140 (2011) (per curiam order) (stating that its holding re-establishing pre-Henderson I precedent for equitable tolling of the 120-day appeal judicial period “is subject to revision, pursuant to the Court’s rule-making authority”). Thus, by our count, five of the judges of the Court — our three colleagues in Bove and the two of us — favor a more measured approach to the adoption of such a rule. Why that count does not carry the day remains unexplained.
C. Application of Existing Precedent Resolves this Appeal
Third, although Mr. Rickett’s case may seem unique among the Federal Circuit cases discussed by the majority, in that he timely misfiled his Notice of Appeal at VA’s Office of the General Counsel, the issue it presents is easily resolved by the simple application of Bailey (Edward).
In that case, the underlying Board decision was issued on September 18, 2000. On December 28, 2000, 101 days after the Board decision, Mr. Bailey completed a VA Form 9, ordinarily used for filing a Substantive Appeal to the Board from a regional office decision, that the parties agreed was intended to serve as a Notice of Appeal to the Court. Mr. Bailey took the Form 9 to his non-attorney representative at the Georgia Department of Veterans Services, a State agency, who agreed to forward it to the appropriate place. Instead of sending the Notice of Appeal to the Court, however, the representative for *230 warded it to the regional office where Mr. Bailey’s claim originated. The Notice of Appeal was received there on January 3, 2001,107 days after the Board decision. In June 2001, Mr. Bailey called the Court to inquire as to the status of his appeal and, upon learning that the Court never received his Notice of Appeal, immediately sent a copy to the Court, where it was received on June 27, 2011.
Later investigation revealed that, although the regional office received Mr. Bailey’s Form 9 from the [Georgia Department of Veterans Services] on January 3, 2001, it took no action with respect to that document until October 4, 2001, when Mr. Bailey’s new representative contacted the regional office to inquire as to the whereabouts of the notice of appeal. The regional office located the date-stamped Form 9 in its “overflow” file where it had been sitting since it was received from the [Georgia Department of Veterans Services].
Bailey (Edward), 351 F.3d at 1383.
The similarities to Mr. Rickett’s case are undeniable. On November 5, 2008, the Board mailed its decision to Mr. Rickett. On January 8, 2009, Mr. Rickett mailed to VA’s Office of the General Counsel a document that the majority concludes — and we agree — was intended to serve as a Notice of Appeal. The Office of the General Counsel received Mr. Rickett’s Notice of Appeal on January 26, 2009, well before the end of the 120-day judicial appeal period. The Office of the General Counsel forwarded the document to the Waco VA regional office where Mr. Rickett’s claim originated, which received it on February 19, 2009, also prior to the expiration of the judicial appeal period. The regional office stamped the document “Appeals” and placed it in a locked cabinet where Board decision files are held for 150 days after a Board decision to maintain their integrity pending appeal to this Court. Neither the Office of the General Counsel nor the regional office advised Mr. Rickett that he had misdirected his Notice of Appeal. In April 2009, after receiving no information regarding his appeal, Mr. Rickett contacted the Court and learned that no Notice of Appeal had been received. To correct his error, he immediately mailed a Notice of Appeal to the Court and attached a copy of his letter to the Office of the General Counsel. The Notice of Appeal was received by the Court on April 14, 2009, again, no more than 13 days after Mr. Rickett learned of his misfiling.
As noted above, the Federal Circuit in Bailey (Edward) unequivocally stated that, “as a matter of law, a veteran who attempts to file a [N]otice of [A]ppeal by completing a document that is clearly intended to serve as a [N]otice of [Ajppeal and who has that document delivered to the regional office from which the veteran’s claim originated within the 120-day statutory period for appeal is entitled to invoke the doctrine of equitable tolling.” Id. at 1385 (emphasis added); see Santana-Venegas, 314 F.3d at 1297-98; Jaguay, 304 F.3d at 1288-89; Bailey (Harold) v. West, 160 F.3d 1360, 1368 (Fed.Cir.1998); see also Brandenburg, 371 F.3d at 1362. In this case, Mr. Rickett’s Notice of Appeal reached the regional office where his claim originated within the 120-day judicial appeal period and, as the Federal Circuit has unequivocally found, he has therefore demonstrated diligence in pursuing his appeal to this Court as a matter of law. Mr. Rickett has therefore also met the three Hunt requirements for equitable tolling: (1) He acted diligently by (2) timely delivering to the regional office where the claim originated (or the Board) a document intended to serve as a Notice of Appeal (3) that was sufficient to put VA on notice of his intent to appeal the Board decision to the Court. See Hunt, 20 Vet. *231 App. at 524; see also Jaquay, 304 F.3d at 1288. Accordingly, that is the end of the matter.
D. Expansion of Acceptable Locations for Timely Misfílings
Law made in a vacuum is fraught with unintended consequences. The majority ignores the Federal Circuit’s guidance on acceptable locations for the timely misfiling of a Notice of Appeal that trigger the consideration of equitable tolling:
Read together, Santana-Venegas, Bailey (Edward), Brandenburg, and Hunt stand for the proposition that equitable tolling is predicated primarily on the due diligence of the prospective appellant as opposed to the particularity of the location at which the prospective appellant misfiles his or her [Notice of Appeal]. Thus, to the extent that Reed stands for the proposition that equitable tolling based on a misfiled [Notice of Appeal] applies only when the misfiling is at the [regional office] that processed the claim or at the Board, or that timely misfílings at the [VA Office of the General Counsel] are not subject to equitable tolling per se, such holdings are overturned ....
Ante at 218. The majority effectively — and impermissibly — eliminates the limitations so far imposed by the Federal Circuit (i.e., that the Notice of Appeal be filed within VA, either at the regional office where the claim was originally filed, Santana-Venegas, 314 F.3d at 1297, or at the Board, with which the appellant has previously and most recently dealt in the prosecution of the claim, Brandenburg, 371 F.3d at 1364; or, in very limited circumstances, outside VA, such as with a representative of a service organization who provided representation to the appellant throughout the administrative claims process and who forwarded the Notice of Appeal to the regional office where the claim originated, Bailey (Edward), 351 F.3d at 1385). At least one part of the majority opinion might also be read to expand the locations for timely misfiling even well outside VA. See ante at 218 (“A prospective appellant must demonstrate with independent proof ... that the [Notice of Appeal] was misfiled — i.e., filed at a location other than the Court — within the 120-day filing period.” (emphasis added)). In other portions of its opinion, however, the majority appears to limit the possible locations for timely misfílings to VA, although without limiting the locations within VA. See ante at 220 (“In certain circumstances, there may be misfílings of a[ ] [Notice of Appeal] at other VA offices that might reflect due diligence.”), 10 (“[T]he timely misfiling of a[] [Notice of Appeal] with VA does not abate the finality of a Board decision....”), 10-11 (“[Although a prospective appellant exercises due diligence as a matter of law at the point in time where he or she files a[] [Notice of Appeal] within the 120-day appeal period at ... possibly other locations within VA, ... ”). Such inconsistency only further confuses the issue.
Even more troubling, in eliminating the limitations imposed by the Federal Circuit, the majority offers no guidance for Judges of the Court considering timely misfílings at “locations other than the Court” or “other VA offices,” leaving the door open to unnecessary litigation regarding what persons or entities within the vastness of VA may receive a timely misfiled Notice of Appeal.[12] Leaving the determination of *232 such an important question afloat without navigational aids means only that the issue will drift from place to place, carried by the current of multiple decisions of this Court, until it finds permanent anchorage, which will undoubtedly be provided by the Federal Circuit.
In light of the analysis set forth above, we concur only in the result reached by the majority.

. To the extent that Brandenburg v. Principi conflated intent to appeal and notice to VA of *227 that intent, see 371 F.3d 1362, 1364 (Fed.Cir.2004) ("[i]f the veteran meets both criteria ... ”), we believe, practically, that it matters not whether they are separate factors or a single factor.

. The majority purports to "leave for another day” the question of whether due diligence *228 must also be shown between the timely misfiling and learning of the misfiling. Ante at 222 n. 5; see also ante at 225 n. 7. One is hard pressed to imagine what a prospective appellant might do during that time that could demonstrate due diligence. Obviously, as the Federal Circuit’s repeated finding of due diligence as a matter of law in the timely misfiling itself implies, the prospective appellant has already done all be understands to be necessary to pursue his appeal and has no reason to take any additional action until he learns of the misfiling.

. Mr. Santana-Venegas took 21 days; Mr. Edward Bailey took fewer than 27 days; Mr. Brandenburg took 91 days.

. In fact, Mr. Rickett’s Notice of Appeal to the Court appears to have been written and sent the very day he learned of the misfiling. The cover letter attached to his Notice of Appeal, dated April 14, 2009, indicates that he received a return phone call from the Court's Public Office that day, as that letter states, "Thank you for returning my [call] today.” Notice of Appeal at 1. Although Mr. Rickett’s Notice of Appeal was date-stamped received by the Court on April 17, 2009, by operation of 38 U.S.C. § 7266(c)(b)(2), it is docketed as filed on April 14, 2009, the date of the U.S. Postal Service postmark on the envelope.

. VA employs more than 278,000 people in numerous divisions, including the following: Compensation and Pension, Education and Training, Medical Care, Home Loan Assistance, Research, Insurance, Vocational Rehabilitation, National Cemeteries, General Administration. See http://www.va.gov/landing_ organizations.htm (last visited Jan. 16, 2013); *232 see also http://www.va.gov/opa/publications/ factsheets/fs_department_of_veterans_affairs. pdf (Jan. 2009 VA Fact Sheet). In delivering medical care alone, VA operates “152 hospitals; 800 community based outpatient clinics; 126 nursing home care units; and 35 domicil-iaries.” http://www.va.gov/about_va/vahistory. asp (last visited Jan. 16, 2013).
The VA Office of the General Counsel consists of seven professional groups dealing with such diverse legal questions as administrative claims and litigation under the Federal Tort Claims Act; legal services regarding education programs for veterans and their dependents; advice concerning programs of disability and death compensation and pension for Veterans and their survivors; and Federal life-insurance programs for servicemembers and veterans; advice in the areas of healthcare eligibility and benefits, medical administration, medical research, labor-management relations, human resources, crimes and police matters, VA-affiliated nonprofit corporations, technology transfer and ethics; equal employment opportunity law, information law, appropriations/fiscal law, and intellectual property law; Government contracts, including procurement, bid protests, and contract litigation; real- and personal-property law; and environmental law. See Evaluating the U.S. Department of Veterans Affairs Office of General Counsel: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm, on Veterans' Affairs, 111th Cong. (2010) (statement of Will Gunn, General Counsel, U.S. Dep’t of Veterans Affairs).
Ultimately, when an appellant does not follow instructions for properly filing a Notice of Appeal, he places a burden on the system that diverts resources from claims filed by his fellow veterans. In a sympathetic system, it is fair to require the Secretary to train employees in certain offices how to handle a misfiled Notice of Appeal. Beyond a certain point, however, large swaths of VA employees have no meaningful connection to appellate adjudication; training employees of these divisions to recognize a misfiled Notice of Appeal is unreasonable. The expenditure of resources involved in such training would far outstrip the benefit to the rare veteran who, contrary to express instruction, grossly misfiles a Notice of Appeal.